IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Signature Styles, LLC,[1] | ) | Case No. 11-_____ (___) |
|    a Delaware limited liability company, | ) | |
| | ) | Joint Administration Pending |
|                   Debtors. | ) | |

## MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING CERTAIN LIENS, (III) MODIFYING THE AUTOMATIC STAY AND (IV) SCHEDULING INTERIM AND FINAL HEARINGS

The above-captioned debtors (together, the "Debtors")[2] hereby move the Court, pursuant to sections 105(a), 361, 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Del. Bankr. L. R. 4001-2, for the entry of an interim order (the "Interim Order"), substantially in the form annexed hereto as Exhibit A, and a final order (the "Final Order" and, together with the Interim Order, the "DIP Orders"): (i) authorizing the Debtors to obtain postpetition financing by entering into that certain Debtor-In-Possession Credit Agreement (as amended, modified and in effect from time to time, the "DIP Credit Agreement" and together with any and all other related documents and agreements entered into in connection with or related to the DIP Facility, including, without limitation, any fee letters, the "DIP Credit Documents"), by and among Signature Styles, LLC (the "Borrower") as borrower, Signature Styles Gift Cards, LLC (the "Guarantor") as guarantor, the lenders named

---

[1] The Debtors in these chapter 11 cases, and the last four digits of their respective tax identification numbers, are: Signature Styles, LLC (4502) and Signature Style Gift Cards, LLC (8699). The location of the Debtors' corporate headquarters is: 711 Third Avenue, 4th Floor, New York, New York 10017.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Credit Agreement (as defined below) or the Interim Order (as defined below), as applicable.

1

therein (collectively, the "DIP Lenders"), and Patriarch Partners Agency Services, LLC, as Administrative Agent for the DIP Lenders (in such capacity, the "DIP Agent"), dated June 6, 2011, substantially in the form attached as Exhibit A to the proposed Interim Order; (ii) granting certain liens; (iii) modifying the automatic stay; and (iv) scheduling interim and final hearings with respect to the relief requested herein (the "Motion"). In support of this Motion, the Debtors respectfully state as follows:

## BACKGROUND

1. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The factual background regarding the Debtors, including their respective business operations, their capital and debt structure, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the Declaration of Robert Angart in Support of Chapter 11 Petitions and First Day Pleadings (the "Angart Declaration"), filed concurrently herewith and fully incorporated herein by reference.

2. The Debtors are continuing in possession of their respective properties and are operating and maintaining their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No trustee or examiner has been appointed in the Chapter 11 Cases, and no creditors' committee has yet been appointed.

2

DLI-6356532v4

*Pre-Petition Senior Secured Indebtedness*[3]

4. Pre-Petition Credit Agreement. Prior to the Petition Date, the Debtors were party to (A) that certain Credit Agreement (as amended, modified or supplemented and in effect from time to time, the "Pre-Petition Credit Agreement"), dated as of June 12, 2009, by and among the Debtors, Patriarch Partners Agency Services, LLC ("PPAS"), as administrative agent (in such capacity, the "Pre-Petition Agent"), and the lenders party thereto (collectively, the "Pre-Petition Lenders" and collectively with the Pre-Petition Agent, the "Pre-Petition Secured Parties"), and (B) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of the Pre-Petition Secured Parties, including, without limitation, notes, security agreements, pledge agreements, and UCC financing statements and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified or supplemented and in effect from time to time, collectively, the "Pre-Petition Loan Documents").

5. Pre-Petition Collateral. To secure the Pre-Petition Debt (as defined below), the Debtors granted security interests and liens (the "Pre-Petition Liens") to the Pre-Petition Agent, for itself and for the benefit of the other Pre-Petition Secured Parties, upon substantially all of the Debtors' property and assets, including, without limitation, equipment, inventory, capital stock (other than certain capital stock of foreign subsidiaries), accounts, deposit accounts, chattel paper, promissory notes, trademarks, copyrights, patents, other intellectual property and commercial tort claims and the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all such

---

[3] All amounts referenced herein are as of the Petition Date, unless otherwise indicated. The following summary is qualified in its entirety by reference to the Pre-Petition Loan Documents (as defined herein). In the event of any conflict between this summary and the Pre-Petition Loan Documents, the Pre-Petition Loan Documents shall control.

collateral (each as defined in the Pre-Petition Loan Documents) (collectively, the "Pre-Petition Collateral"), with priority over all other liens except any senior liens otherwise permitted by the Pre-Petition Loan Documents or applicable law (the "Pre-Petition Permitted Liens").

6. <u>Pre-Petition Debt.</u> As of the Petition Date, the Debtors owed obligations to the Pre-Petition Secured Parties under the Pre-Petition Credit Agreement of at least $37.24 million for outstanding term and revolving loans, advances and/or financial accommodations (the "Pre-Petition Debt").

## *The Debtors' Immediate Need For Liquidity*

7. As described in the Angart Declaration, the Debtors have an immediate need to obtain funds under the DIP Facility in order to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, to preserve and maintain the value of the their assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates and their creditors and jeopardize the proposed process for selling the Debtors' assets as a going concern. Following discussions and negotiations among the Debtors and PPAS, the DIP Lenders have agreed to provide financing for these cases provided that the Debtors pursue an expedited sale of substantially all their assets to Artemiss, LLC (the "Buyer"), an acquisition entity formed by the Pre-Petition Lenders, or to a higher and better bidder selected after a public auction. The Debtors have determined that a prompt sale of substantially all of their assets pursuant to section 363 of the Bankruptcy Code is in the bests interest of the estates because it will maximize value for the Debtors' stakeholders.

8. In order to provide the Debtors with an opportunity to appropriately market and ultimately consummate a sale of their assets, the Debtors require access to the DIP

4

DLI-6356532v4

Facility. Without access to the DIP Facility, the Debtors will be unable to continue their business operations or pay the postpetition costs and expenses necessary to administer these chapter 11 cases.

## **RELIEF REQUESTED**

9. By this Motion, the Debtors seek entry of the DIP Orders, inter alia:

(a) under sections 364(c), (d) and (e) of the Bankruptcy Code, authorizing the Debtors to obtain postpetition financing, on the terms set forth in the DIP Credit Agreement, with the funds thereunder available for use in accordance with the Budget (as amended, modified or updated in accordance with the DIP Credit Agreement) and the other terms set forth in the DIP Credit Agreement;

(b) under sections 361, 362, 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, granting to the DIP Agent and the DIP Lenders (collectively, the "DIP Secured Parties") certain liens on the Collateral as security for the repayment of the borrowings and other obligations arising under the DIP Credit Agreement;

(c) under section 364(c)(1) of the Bankruptcy Code, granting superpriority administrative claim status to the claims of the DIP Secured Parties under the DIP Credit Agreement;

(d) under sections 363 and 364 of the Bankruptcy Code, authorizing the Debtors to use the proceeds of the DIP Facility in a manner consistent with the terms and conditions of the DIP Credit Agreement, and in accordance with the Budget;

(e) under section 362 of the Bankruptcy Code, modifying the automatic stay to the extent set forth in the DIP Credit Agreement;

(f) pursuant to Bankruptcy Rule 4001, scheduling a preliminary hearing on this Motion, and authorizing the Debtors from the entry of the Interim Order until the final hearing (the "Final Hearing") to obtain credit under the terms contained in the DIP Credit Agreement to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates; and

(g) pursuant to Bankruptcy Rule 4001, scheduling a Final Hearing on this Motion, and establishing notice procedures in respect of such Final Hearing.

## I. Material Terms Of The DIP Credit Agreement

10. The principal terms of the DIP Credit Agreement are as follows:[4]

| | |
|---|---|
| **Administrative Agent:** | Patriarch Partners Agency Services, LLC |
| **DIP Lenders:** | Zohar III Limited |
| **Borrower:** | Signature Styles, LLC |
| **Guarantors:** | Signature Styles Gift Cards, LLC and each other Domestic Subsidiary that from time to time become guarantors |
| **DIP Facility:** | The DIP Facility will consist of a senior revolving credit facility with a maximum commitment of $7.0 million. |
| **Maturity Date:** | All (a) DIP Obligations of the Debtors to the DIP Lenders shall be immediately due and payable (subject to the provisions of the Interim Order) and (b) authority to use the proceeds of the DIP Credit Documents shall cease, both on the date that is the earliest to occur of (i) the date on which a sale of all or substantially all of the Debtors' assets is consummated or (ii) August 15, 2011. |
| **Use of Proceeds:** | The DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Credit Agreement, and in accordance with the Budget solely for general corporate purposes, in each case to the extent expressly permitted under applicable law, the DIP Credit Documents and the DIP Orders.<br><br>Under no circumstances may Loans be used (a) to pay all or part of any Indebtedness of the Debtors arising prior to the Petition Date, except as permitted pursuant to section 6.1(i) of the DIP Credit Agreement or (b) in violation of the DIP Orders. In addition, under no circumstances will the Debtors use, directly or indirectly, the proceeds of the Loans to compensate services rendered or expenses incurred in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration, or similar relief |

---

[4] The description of the material terms of the DIP Credit Agreement set forth herein is for summary purposes only; the terms of the DIP Credit Agreement shall control in all circumstances.

(i) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations or the Liens granted to the DIP Agent and the DIP Lenders pursuant to the DIP Orders, the DIP Credit Agreement or any of the DIP Credit Documents; (ii) modifying, staying, vacating, or amending the DIP Orders without the consent of the DIP Agent; (iii) granting or imposing, under section 364 of the Bankruptcy Code or otherwise, Liens on any Collateral, whether equal, superior, or subordinate, to the Liens granted to the DIP Agent and the DIP Lenders on such Collateral, except as otherwise expressly permitted by the DIP Credit Agreement, (iv) permitting the use of cash collateral as defined in section 363 of the Bankruptcy Code, except as expressly permitted by the DIP Orders, (v) granting any modification, alteration or impairment in any manner of the Liens, rights or remedies granted to the DIP Agent and the DIP Lenders pursuant to the DIP Orders, the DIP Credit Agreement or any of the DIP Credit Documents (including, without limitation, the DIP Agent's and the DIP Lenders' right to demand payment of all Obligations and to enforce their Liens in the Collateral), whether by plan of reorganization or liquidation, order of confirmation, or any financings of, extensions of credit to, or incurring of Indebtedness by the Debtors, whether pursuant to section 364 of the Bankruptcy Code or otherwise; or (vi) granting a priority for any administrative expense, secured claim or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expenses of the kind specified in sections 105, 326, 327, 328, 330, 331, 503, 506(c), 507, 726 or 1114 of the Bankruptcy Code or otherwise) which are equal or superior to the priority of the DIP Agent and the DIP Lenders in respect of the Obligations.

**Budget:** The Borrower shall not pay any expenditures except in accordance with the Budget, as approved by the DIP Agent.

**Interest Rate:** The Obligations shall bear interest at a rate per annum equal to the LIBOR Rate plus 8%. If the introduction or any change in any law or regulation applicable to any DIP Lender makes it unlawful for any DIP Lender to maintain LIBOR loans, then the Obligations shall, at Borrower's request, bear interest at a rate per annum equal to the Bare Rate plus 4.5%

Upon the occurrence and during the continuation of an Event of Default, all Obligations shall bear interest payable on demand at a rate equal to 2.0% per annum in excess of the

7

|                           |                                                                                                                                                                                                                                                                                                                                                                                                                  |
|---------------------------|--|
| **Security:**             | rate otherwise papyable.                                                                                                                                                                                                                                                                                                                                                                                         |
|                           | The DIP Facility will be secured by (i) a perfected first priority lien on all property and assets of each Debtor and its estate that, as of the Petition Date, is not subject to any Liens other than avoidable liens; (ii) a perfected lien upon all property and assets of each Debtor that is subject to unavoidable Liens in existence as of the Petition Date other than the Pre-Petition Liens, having a priority that is junior only to such unavoidable Liens; and (iii) a perfected lien on all property of each Debtor that is subject to the Pre-Petition Liens, junior only to the Permitted Prior Liens. |
|                           | The DIP Facility will also be secured by a superpriority administrative expense claim having priority over all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all expenses and claims of the Debtors, whether heretofore or hereafter incurred, including, but not limited to, the kind specified in Sections 105, 326, 328, 506(c), 507(a) or 1114 of the Bankruptcy Code. |
| **DIP Agent Fee:**        | $75,000, payable on the Closing Date and on each anniversary thereof on terms and conditions separately agreed upon by the Agent and the Borrower. |
| **Revolving Commitment Fee:** | Payable monthly in arrears on each Interest Payment Date, a per annum rate equal to 1.50% on each DIP Lender's Pro Rata Share of the daily difference between the Commitments and the aggregate principle amount of outstanding Loans. |
| **Expenses:**             | All actual costs and reasonable expenses of the DIP Secured Parties in connection with the DIP Credit Documents, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses will be paid by the Borrower. |
| **Termination Date Loans:** | On the earlier to occur of (i) the Maturity Date, (ii) the date of the termination of the Commitments pursuant to Section 8.2 of the DIP Credit Agreement, (iii) the conversion of either of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code and (iv) the date following any period of |

three consecutive Business Days in which the DIP Lenders and the DIP Agent have denied the Borrower's requests to fund Loans to be used to pay Professional Fees and Expenses as a result of an Event of Default, (collectively, the "Termination Date"), the Borrower shall be deemed to have requested (i) a Loan in an aggregate amount equal to the accrued and unpaid Professional Fees and Expenses of Borrower's counsel, less any remaining retainer then held by Borrower's counsel on account of Professional Fees and Expenses incurred in connection with the Chapter 11 Cases, plus $25,000, (ii) if a Creditors' Committee exists, a Loan in an aggregate amount equal to the accrued and unpaid Professional Fees and Expenses of the Creditors' Committee, plus $15,000, and (iii) a Loan in an aggregate amount equal to the accrued and unpaid Professional Fees and Expenses of counsel to the DIP Agent and the DIP Lenders (collectively, the "Termination Date Loans"). The Borrower shall not be required to provide a Borrowing Certificate or otherwise comply with the requirements set forth in Sections 2.2 or Section 3.2 of the DIP Credit Agreement in connection with the Termination Date Loans (other than Sections 3.2(e) and (f) of the DIP Credit Agreement) and the DIP Lenders agree to make such Termination Date Loans notwithstanding Borrower's failure to comply with such sections so long as the conditions precedent in Sections 3.2(e) and (f) of the DIP Credit Agreement have been satisfied. The proceeds of the Termination Date Loans (other than proceeds of the Termination Date Loans described in clause (iii) immediately above) shall be deposited directly into the Professional Fee Account and the proceeds of the Termination Date Loans described in clause (iii) immediately above shall be deposited directly into an account designated by counsel to the DIP Agent and the DIP Lenders. Professional Fees and Expenses of Debtors' counsel and the Creditors' Committee that are allowed by order of the Court but are unpaid, or are incurred after the Termination Date in an amount up to $25,000 for Debtors' counsel, and $15,000 for the Creditors' Committee, shall be paid to Debtors' counsel or the Creditors' Committee's professionals, as applicable, from the Professional Fee Account. Any proceeds of the Termination Date Loans in excess of the Professional Fees and Expenses that are paid pursuant to the preceding sentence shall be returned the DIP Lenders. In no event shall the aggregate amount of Loans used to pay Professional Fees and Expenses exceed $1,400,000.

| | |
|---|---|
| **Events of Default:** | The usual and customary events of default for a credit facility of this type, but also including several transaction-specific events of default, such as: (i) the failure of the Debtors to file with the Court, on the Petition Date, a motion seeking entry of an order approving bidding procedures for the 363 Asset Sale, in form and substance acceptable to the DIP Agent (the "<u>Bidding Procedures Order</u>"); (ii) the failure of the Debtors to file with the Court, on the Petition Date, a motion seeking entry of an order (the "<u>Sale Approval Order</u>") approving the Stalking Horse Agreement, in form and substance acceptable to the DIP Agent; (iii) the failure of the Court to (a) enter the Bidding Procedures Order on or before June 30, 2011 and (b) enter the Sale Approval Order on or before August 4, 2011; (iv) the failure of the Court to enter a Final DIP on or before June 30, 2011; and (v) the entry of an order by the Court approving the sale of any material assets of the Debtors to a purchaser other than the Buyer. |
| **Remedies on Default:** | Subject to the terms of the DIP Orders, upon the occurrence, and during the continuation, of an Event of Default, the DIP Agent may, and at the request of the Required Lenders shall, by notice to the Borrower from time to time do any or all of the following: (i) declare the unpaid principal amount of the Loans and interest accrued thereon and all other Obligations to be immediately due and payable, which shall become immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrower or (ii) declare the Commitments terminated, whereupon the Commitments will terminate and any fee hereunder shall be immediately due and payable without presentment, demand, protest or further notice of any kind, all of which are hereby waived, and an action therefor shall immediately accrue. The DIP Agent shall, at the request of or with the consent of the Required Lenders, (i) exercise all rights and remedies provided in the Credit Documents, (ii) exercise any right of counterclaim, setoff, banker's lien or otherwise which it may have with respect to money or property of the Borrower, (iii) bring any lawsuit, action or other proceeding permitted by law for the specific performance of, or injunction against any violation of, any Credit Document and may exercise any power granted under or to recover judgment under any Credit Document, (iv) enforce any and all Liens and security interests created pursuant to the Credit Documents, and (v) exercise any other right or remedy permitted by applicable Regulations. The DIP Agent and the DIP Lenders shall have all other rights and |

| | remedies available at law or in equity or pursuant to any other Loan Document. |
|---|---|
| **Covenants:** | Usual and customary affirmative and negative covenants for asset based facilities of this type. |
| **Representations and Warranties:** | Usual and customary for a facility of this type. |

## II. Provisions That Potentially Implicate Local Rule 4001-2

11. Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") requires that certain provisions contained in the DIP Credit Agreement be highlighted and that the Debtors provide justification for the inclusion of such highlighted provision(s).

12. Local Rule 4001-2(a)(i) provides:

Provisions to be Highlighted. All Financing Motions must (a) recite whether the proposed form of order and/or underlying cash collateral stipulation or loan agreement contains any provision of the type indicated below, (b) identify the location of any such provision in the proposed form of order, cash collateral stipulation and/or loan agreement and (c) justify the inclusion of such provision:

(A)  Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the pre-petition secured creditors (i.e., clauses that secure pre-petition debt by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its pre-petition security agreement or applicable law);

(B)  Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's pre-petition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters;

(C)  Provisions that seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c);

(D)  Provisions that immediately grant to the pre-petition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549;

(E) Provisions that deem pre-petition secured debt to be postpetition debt or that use postpetition loans from a pre-petition secured creditor to pay part or all of that secured creditor's pre-petition debt, other than as provided in 11 U.S.C. § 552(b);

(F) Provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve out; and

(G) Provisions that prime any secured lien without the consent of that lienor.

13. The Debtors believe that the following provisions of the DIP Credit Agreement are required to be identified in accordance with Local Rule 4001-2 and that such provisions are justified and necessary in the context and circumstances of these cases.

(i) **Local Rule 4001-2(a)(i)(B)**

14. Local Rule 4001-2(a)(i)(B) requires a movant to identify provisions that bind the estates or other parties in interest with respect to the validity, perfection or amount of the secured creditor's pre-petition lien or the waiver of claims against the secured creditor without first giving parties in interest at least 75 days from the entry of the order and any official committee of unsecured creditors appointed in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code, if formed, at least 60 days from the date of its formation to investigate such matters.

15. The Interim Order provides that that the Debtors' admissions, stipulations and releases contained in the Interim Order and the Final Order shall be binding upon all parties in interest, including any Creditors' Committee, for all purposes, unless (1) the Creditors' Committee or any other party in interest with standing commences a contested matter or adversary proceeding by no later than the earlier of (a) two business days prior to the bid deadline established by an order of this Court or (b) 75 days after the Petition Date, challenging the amount, validity, enforceability, priority or extent of the Pre-Petition Debt or the Pre-Petition Secured Parties' security interest in and lien upon the Pre-Petition Collateral or otherwise

asserting any claims or causes of action against the Pre-Petition Lenders on behalf of the Debtors' estates, and (2) the Court rules in favor of the plaintiff in any such filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is filed within the requisite time period or the Court does not rule in favor of the plaintiff in any such proceeding: (a) the Debtors' admissions, stipulations and releases contained in the Interim Order and the Final Order shall be binding on all parties in interest, including any Creditors' Committee; (b) the obligations of the Debtors under the Pre-Petition Loan Documents shall constitute allowed claims for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (c) the Pre-Petition Lenders' security interests in and liens upon the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (d) the Pre-Petition Debt and the Pre-Petition Lenders' security interests in and liens on the Pre-Petition Collateral shall not be subject to any other or further challenge by any Creditors' Committee or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such adversary proceeding or contested matter is filed within the requisite time period, the Debtors' admissions, stipulations and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph), except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. (Interim Order at ¶ 5.) The Buyer proposes to purchase the Debtors' assets, as further set forth in the Stalking Horse Agreement, including avoidance actions under chapter 5 of the Bankruptcy Code relating to the to the Pre-Petition Obligations, the Pre-Petition Lenders and PPAS, by assuming an aggregate amount equal to $30,000,000, such amount to be allocated

13

between the outstanding Pre-Petition Obligations and the outstanding DIP Facility Obligations, in the sole discretion of Buyer. Accordingly, any Creditors' Committee will be required to challenge the liens or allowance of claims under the Pre-Petition Credit Agreement, and investigate any potential avoidance actions to be purchased by the Buyer on or before the deadline for objection to the 363 Asset Sale. The Debtors submit that these provisions are justified due to the exigencies of these cases.

### (ii) Local Rule 4001-2(a)(i)(C)

16. Local Rule 4001-2(a)(i)(C) requires explicit disclosure of provisions that constitute a waiver, without notice, of the estates' rights under section 506(c) of the Bankruptcy Code. The Interim Order provides for a waiver of the Debtors' rights vis-a-vis the Pre-Petition Secured Parties and the DIP Lenders under section 506(c) of the Bankruptcy Code only upon entry of the Final Order. (Interim Order at ¶¶ F, 8.) As the effectiveness of this waiver will be delayed until the entry of the Final Order, the Debtors respectfully submit that parties in interest will have an opportunity to be heard and, as such, the waiver will not be "without notice."

### (iii) Local Rule 4001-2(a)(i)(D)

17. Local Rule 4001-2(a)(i)(D) requires disclosure of provisions under which the Debtors grant liens on the Debtors' claims or causes of action under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code (the "Avoidance Actions"). The Interim Order provides the DIP Lenders with a lien on the proceeds of Avoidance Actions commenced under section 549 of the Bankruptcy Code. (Interim Order at ¶¶ 2(e), 4.) As set forth herein, the Debtors have an immediate need to access the DIP Facility and have determined that the terms of the DIP Facility are the best available under the circumstances. The proposed lien on proceeds of Avoidance Actions is limited to only those actions commenced under section 549. The Debtors respectfully submit that this limitation renders the proposed lien reasonable under the circumstances.

## BASIS FOR RELIEF

18. Section 364(c) of the Bankruptcy Code provides:

If the [debtor in possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

19. Section 364(d)(1) of the Bankruptcy Code provides:

The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –

(A) the [debtor in possession] is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

20. Bankruptcy Rule 4001(c)(2) provides:

The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c)(2).

21.     Bankruptcy Rule 4001(d) provides, in relevant part, that (i) a motion for approval to modify or terminate the automatic stay shall be served on any committee appointed pursuant to section 1102 of the Bankruptcy Code, on the creditors included on the list filed under Bankruptcy Rule 1007(d), and on such other entities as the court may direct, and (ii) objections may be filed within 14 days of the mailing of the notice of the motion and the time for filing objections thereto. See Fed. R. Bankr. P. 4001(d).

## I.     **The DIP Facility**

22.     The Debtors were unable to obtain postpetition financing on an unsecured basis or on a junior priority basis to the Pre-Petition Lenders. The Debtors negotiated the DIP Credit Agreement at arm's length and have determined, in the exercise of their business judgment, that it is the best proposal under the circumstances. Provided that this determination does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its business judgment. See, e.g., In re Ames Dept. Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (courts have discretion under section 364 of the Bankruptcy Code to permit debtors to exercise reasonable business judgment so long as (a) the terms of the financing agreement do not "leverage the bankruptcy process and powers" and (b) the financing agreement's purpose is primarily to benefit the estate, and not a party in interest).

23.     As described above, immediate access to the DIP Facility is critical because of the Debtors' need for cash to operate their business. The financing under the DIP Facility will allow the Debtors, inter alia, to (a) fund the continued operation of, and minimize disruption to, their business and operations, (b) avoid immediate and irreparable harm to their businesses, their creditors, their employees and their assets and (c) permit the Debtors to sell their business as a going concern. The financing provided for in the DIP Credit Agreement is

critical to avoid liquidation, preserve more than 100 jobs and enable the business to continue as a going concern.

24. The Debtors believe that the terms and conditions of the DIP Credit Agreement, including the fee structure set forth in the DIP Credit Agreement, are fair and reasonable under the circumstances. Accordingly, the Debtors request that the DIP Lenders be afforded the benefits of section 364(e) of the Bankruptcy Code in respect of the DIP Credit Agreement. Based upon the foregoing, the Debtors respectfully request that the Court approve the DIP Facility in accordance with the terms set forth in the Interim Order and the DIP Credit Agreement.

## II. Modification Of The Automatic Stay

25. Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition. The proposed DIP Facility and the Interim Order contemplate the modification of the automatic stay to the extent necessary to (1) permit the Debtors to grant the DIP Liens and to incur all liabilities and obligations to the DIP Lenders under the DIP Credit Documents, the DIP Facility and the Interim Order and (2) authorize the DIP Lenders to retain and apply payments hereunder in accordance with the provisions of the Interim Order.

26. Stay modification provisions of this type are standard features of postpetition debtor in possession financing facilities and, in the Debtors' business judgment, are reasonable under the present circumstances. Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order and DIP Credit Agreement.

## III. Interim Approval Of The DIP Facility

27. As set forth above, Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to obtain credit under section 364 of the Bankruptcy Code may not be

commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and to authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

28. The Debtors respectfully request that the Court schedule and conduct a preliminary hearing on this Motion and authorize the Debtors from the entry of the Interim Order until the Final Hearing to obtain credit under the terms contained in the DIP Credit Agreement.

## IV. Establishing Notice Procedures And Scheduling Final Hearing

29. The Debtors respectfully request that the Court schedule the Final Hearing and authorize them to mail copies of the signed Interim Order, which fixes the time, date and manner for the filing of objections, to (a) parties having been given notice of this Motion; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for any Creditors' Committee, (d) the Office of the United States Trustee for the District of Delaware; (e) the Internal Revenue Service; and (f) counsel to the Pre-Petition Agent and the proposed DIP Agent. The Debtors request that the Court approve such notice of the Final Hearing, including without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code.[5]

## NOTICE

30. Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal Revenue Service; (c) the Office of the United States Attorney for the District of Delaware; (d) the Securities and Exchange

---

[5] Local Rule 2002-1(b) provides that "[i]n chapter 11 cases, all motions . . . shall be served only upon counsel for the debtor, the United States Trustee, counsel for all official committees, all parties who file a request for service of notices under Fed. R. Bankr. P. 2002(i) and all parties whose rights are affected by the motion. If an official unsecured creditors' committee has not been appointed, service shall be made on the twenty (20) largest unsecured creditors in the case in lieu of the creditors' committee."

DLI-6356532v4

Commission; (e) the Debtors' twenty largest unsecured creditors, as identified in the Debtors' chapter 11 petitions; (f) counsel to the Pre-Petition Agent and the DIP Agent; (g) all landlords, owners, and/or operators of premises at which any of the Debtors' inventory and/or equipment is located, if any; and (h) certain other parties, if any, identified in the certificate of service filed with the Court, including, without limitation, all creditors who have filed or recorded pre-petition liens or security interests against any of the Debtors' assets. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

WHEREFORE the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit A, (i) granting the relief sought herein, and (ii) granting such other and further relief as the Court may deem proper.

**POLSINELLI SHUGHART PC**

June 6, 2011
Wilmington, Delaware

/s/ Christopher A. Ward
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
Shanti M. Katona (Del Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
jedelson@polsinelli.com
skatona@polsinelli.com

PROPOSED COUNSEL TO DEBTORS
AND DEBTORS IN POSSESSION