# EXHIBIT A

# DECLARATION OF MARK A. FILIPPELL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Signature Styles, LLC, *et al.*,[1] | ) | Case No. 11-_____ (___) |
|    a Delaware limited liability company, | ) | |
| | ) | Joint Administration Pending |
|                 Debtors. | ) | |

## DECLARATION OF MARK A. FILIPPELL

I, Mark A. Filippell, being duly sworn, state the following:

1. I am a Managing Director of Western Reserve Partners LLC ("**Western Reserve**") and am duly authorized to make this Declaration on behalf of Western Reserve. The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto.

2. This Declaration is submitted in support of the application of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") in these chapter 11 cases (the "**Cases**") for authority to employ and retain Western Reserve as investment banker to the Debtors, at the request of the Debtors, and at the expense of the Debtors' estates (the "**Application**").

3. The facts set forth below are based on my personal knowledge, discussions with other Western Reserve employees, and Western Reserve's client/matter records reviewed by me and other Western Reserve employees acting under my supervision and direction. To the extent any information disclosed herein requires amendment or modification upon Western Reserve's completion of further review or as additional information becomes available to it, a supplemental

---

[1] The Debtors in these chapter 11 cases, the last four digits of each tax identification number, and their respective case numbers are: Signature Styles, LLC (4502) (Case No. _____) and Signature Styles Gift Cards, LLC (8699) (Case No. _____). The location of the Debtors' corporate headquarters is: 711 Third Avenue, 4th Floor, New York, New York 10017.

126991.3

declaration will be submitted to the Court reflecting such amended or modified information. Capitalized terms not otherwise defined herein have the meanings given to them in the Application.

4. This Declaration is also submitted as the statement required pursuant to §§ 327, 328 and 504 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## Western Reserve's Qualifications

5. Western Reserve is a professional services firm that focuses solely on investment banking and provides customized investment banking solutions for middle market companies.

6. Western Reserve's professionals have advised companies, secured lenders, creditors' committees, bondholders, purchasers or investors, and other parties in connection with turnarounds, refinancings, distressed sale transactions, and Chapter 11 reorganizations.

7. Western Reserve has a dedicated restructuring investment banking group with extensive experience advising corporations, creditor committees and other constituents in complex situations involving underperforming or unsuitably capitalized businesses facing difficult financing conditions, liquidity crises, out-of-court restructurings or bankruptcy proceedings. Western Reserve has been involved as advisors with respect to financial restructurings, raising of capital, mergers, acquisitions, divestitures and other advisory assignments.

8. Western Reserve's Restructuring & Bankruptcy practice is led by three managing directors who have more than 70 years of collective experience in addressing the strategic, financial, operational and legal issues associated with the reorganization or disposition of troubled enterprises. They have worked on over 100 engagements involving publicly and

126991.3

privately held businesses throughout the United States with indebtedness ranging from $10 million to over $5 billion.

9. Professionals at Western Reserve have worked closely with the Debtors' management and other professionals and have become well-acquainted with the Debtors' operations, creditors, business, debt structure, and other matters. Western Reserve has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these Cases.

10. Professionals at Western Reserve have extensive experience in the reorganization and restructuring of troubled companies and sale of such companies or such companies' assets, both out of court and in chapter 11 proceedings. Western Reserve professionals have been involved with several significant bankruptcy proceedings, representing both debtors and creditor constituencies, including the following representative cases: Eagle-Picher, Grabill, TIC United, AL Tech Specialty Steel Corp.; Allied Die Casting & Manufacturing; Bethlehem Steel Corporation; and Midway Cap Co. Western Reserve professionals have significant experience in marketing distressed businesses, and have consummated distressed sale transactions, including those pursuant to Section 363 of the Bankruptcy Code. Moreover, Western Reserve has experience in providing investment banking services in the apparel industry. Such experience includes providing general financial advisory services and being involved as advisors with respect to the raising of capital, mergers, acquisitions, and divestitures for companies in this sector. Accordingly, Western Reserve and the professionals it employs are well qualified to represent the Debtors in the matters for which Western Reserve is proposed to be employed.

11. Western Reserve has agreed to provide investment banking advisory services to the Debtors in the Cases pursuant to the terms and conditions of the engagement letter agreement

between the Debtors and Western Reserve (the "**Engagement Letter**"), a copy of which is attached hereto as Schedule 1, and which is incorporated by reference.

## Western Reserve's Disclosure Procedures

12. Western Reserve is a large and diversified organization that encompasses the representation of many financial institutions and commercial corporations. In preparing this Declaration, I used a set of procedures (the "**Firm Disclosure Procedures**") developed by Western Reserve to ensure compliance with the requirements of the Bankruptcy Code regarding the retention of professionals. Pursuant to the Firm Disclosure Procedures, I performed, or caused to be performed, the actions described below to identify Western Reserve's connections to parties in interest in these proceedings.

13. To determine its relationship with parties in interest in these Cases, Western Reserve has researched its client database to determine whether it has any relationships with the entities (individually, an "**Interested Party**" and, collectively, the "**Interested Parties**") that were identified to Western Reserve by the Debtors. Such entities include:

   a. The Debtors and their non-debtor affiliates;
   b. The directors and officers of the Debtors;
   c. The Debtors' twenty largest unsecured creditors on a consolidated basis;
   d. The attorneys and other professionals of the Debtors;
   e. The significant pre-petition lenders of the Debtors and their professionals;
   f. Parties believed to hold material amounts of the Debtors' stock and other securities; and
   g. Other potentially adverse parties.

## Western Reserve's Connections with Interested Parties

14. To the best of my knowledge, based on the review procedures described above, Western Reserve does not have any connections to Interested Parties, except as described in this

4

Declaration. Out of an abundance of caution, therefore, I am disclosing past representations that are not, to my understanding, disqualifying or problematic under either the Bankruptcy Code or applicable standards of professional ethics.

15. Neither I, nor any professional or employee employed by Western Reserve, as far as I have been able to ascertain, has any connection that would be materially adverse to the Debtors, its creditors, or any other parties in interest, the Debtors' respective attorneys and accountants or any other Interested Party, except as set forth below or otherwise in this Declaration:

   a. There are no Interested Parties (or their affiliates) whom Western Reserve represents, or has advised in the past, in matters unrelated to the Debtors' Cases.

   b. Western Reserve does not advise, and has not advised, any entity other than the Debtors in matters relating to these Cases.

   c. In matters unrelated to these cases, Western Reserve may have worked with counsel or other professionals involved in these Cases.

   d. Given the number of professionals and employees in various offices, employees at Western Reserve may have professional, working or social relationships with firms or professionals at firms that may be adverse to the Debtors. Also, certain Western Reserve employees may have spouses, parents, children, siblings, fiancées who are employees of one or more of the Interested Parties. Western Reserve has strict policies against disclosing confidential information to anyone outside of Western Reserve, including spouses, parents, children, siblings, fiancés and fiancées.

   e. It is possible that certain Western Reserve employees hold interests in mutual funds or other investment vehicles that may own interests in the Debtors. Despite the efforts described above to identify and disclose Western Reserve's connections with parties in interest in these cases, because Western Reserve is a firm with [thousands] of employees, and because the Debtors is a substantial enterprise with hundreds of creditor and other relationships, Western Reserve is unable to state with certainty that every client relationship has been disclosed. In this regard, if Western Reserve discovers additional information that requires disclosure, Western Reserve will file a supplemental disclosure with the Court.

16. Unless as disclosed herein and to the best of my knowledge, information and belief, neither Western Reserve nor any investment banking professional employed by Western Reserve participating in or connected with Western Reserve's engagement with the Debtors: (i)

5

126991.3

is related to the Debtors or any other party in interest herein, the United States Trustee for the District of Delaware or anyone employed in the United States Trustee's Office for this District; (ii) has any connection with or holds or represents any interest adverse to the Debtors, their estates, creditors or any other Interested Party or their respective attorneys in the matters on which Western Reserve is proposed to be retained; or (iii) has advised any Interested Party, except for the Debtors, in connection with this Chapter 11 case. In addition, Western Reserve does not believe that any relationship that Western Reserve or any of our professionals or employees participating in or connected with Western Reserve's engagement with the Debtors may have with any Interested Party in connection with any unrelated matter will interfere with or impair Western Reserve's representation of the Debtors in these Cases.

17. To the extent Western Reserve discovers any facts bearing on the matters described herein during the period of Western Reserve's retention, Western Reserve undertakes to amend and supplement the information contained in this Declaration to disclose such facts.

18. Based on all of the foregoing, Western Reserve is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.

19. No agreement presently exists to share with any other person or firm any compensation received by Western Reserve for its services in these cases. If any such agreement is entered into, Western Reserve undertakes to amend and supplement this Declaration to disclose the terms of any such agreement.

20. No promises have been received by Western Reserve, or by any employee thereof, as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

126991.3

## Western Reserve's Fee Structure and Indemnity Agreement

21. Western Reserve has provided and agrees to continue to provide assistance to the Debtors in accordance with the terms and conditions set forth in the Application and the Engagement Letter.

22. All of the services that Western Reserve will provide to the Debtors will be (i) at the request of the Debtors and (ii) performed in accordance with customary market practice of the investment banking and financial advisory profession.

23. Western Reserve charges its clients for reasonable expenses associated with an assignment. Except as necessary to comply with an applicable order of this Court, all such expense billings are in accordance with Western Reserve's customary practices.

24. Western Reserve and the Debtors have agreed to a fee structure in anticipation that a substantial commitment of professional time and effort will be required, and in light of this fact that (a) Western Reserve's sizable commitment to the instant matters may foreclose other opportunities that would otherwise be available to Western Reserve; and (b) the actual time and commitment required of Western Reserve may vary considerably throughout the proceedings.

25. Western Reserve will maintain records to support and document actual and necessary costs and expenses incurred in connection with its services in these Cases. Because Western Reserve will not seek compensation on an hourly basis, Western Reserve requests that it not be required to file time records under the trustee guidelines.

26. Likewise, Western Reserve's indemnification agreement in the Engagement Letter, attached hereto, represents the usual and customary agreement entered into between Western Reserve and counter-parties retaining Western Reserve to provide investment banking advisory services and are standard provisions used by other financial advisory and investment

banking firms in the industry. The terms of the indemnification and contribution agreement were fully negotiated at arm's length. Western Reserve believes that it would be required to raise its fees without the assurances provided by the indemnification agreement.

27. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated: June 6, 2011
       Cleveland, Ohio

Respectfully submitted,

**WESTERN RESERVE PARTNERS LLC**

/s/ Mark A. Filippell
Mark A. Filippell, Managing Director
200 Public Square, Suite 3750
Cleveland, Ohio 44114
Telephone: (216) 589-0900
Facsimile: (216) 589-9558

PROPOSED INVESTMENT BANKER TO DEBTORS
AND DEBTORS IN POSSESSION

# SCHEDULE 1

# ENGAGEMENT LETTER



P A R T N E R S L L C

200 Public Square . Suite 3750 . Cleveland, Ohio 44114
Phone: (216) 589-0900 . Fax: (216) 589-9558 . www.wesrespartners.com

June 1, 2011

CONFIDENTIAL

Mr. Robert Angart
Chief Restructuring Officer
Signature Styles, LLC
711 3rd Avenue, 4th Floor
New York, NY 10017

Dear Mr. Angart:

This agreement sets forth the terms and conditions under which Signature Styles, LLC (the "Company") has engaged Western Reserve Partners LLC ("Western Reserve") to provide investment banking services in connection with the bankruptcy reorganization of the Company pursuant to Section 363 of the Bankruptcy Code.

1. Scope of Services. During the term of its engagement hereunder, Western Reserve will identify, analyze, and contact potential purchasers of the Company; distribute the offering memorandum describing the Company's business which will be prepared by the Company; respond to inquiries concerning the Company's bankruptcy sale process; direct those potential purchasers interested in proceeding further to the Company's Chief Restructuring Officer; assist the Company in evaluating the various offers from potential purchasers; negotiate the financial aspects of any offers; and testify in bankruptcy court as to Western Reserve's efforts to market the Company. Although Western Reserve will not be responsible for drafting the Company's offering memorandum, Western Reserve will offer comments to such memorandum without Western Reserve's independent review of the Company's business operations or financial statements being referenced in such memorandum. Western Reserve has not been engaged to provide a valuation of the Company or to issue a fairness opinion in connection with the Company's bankruptcy reorganization.

2. Fees and Expenses. For Western Reserve's services hereunder, the Company will compensate Western Reserve as follows:

(a) Retainer Fee. Upon execution of this agreement, the Company will pay Western Reserve an initial engagement fee in the amount of $25,000, which shall be credited toward any Transaction Fee (as defined below) payable to Western Reserve.

(b) Monthly Fee. Upon every one-month anniversary of the execution of this agreement, the Company will pay Western Reserve a monthly fee of $25,000, which shall be credited toward any Transaction Fee (as defined below) payable to Western Reserve.

(c) Transaction Fee. Upon consummation of any Transaction, the Company agrees to pay Western Reserve a transaction fee (the "Transaction Fee") in the amount of $100,000.

(d) Incentive Fee. The Company shall pay Western Reserve an incentive fee (the "Incentive Fee") equal to 7.0% of the amount by which the final Transaction Value exceeds the credit bid, which credit bid shall be equal to the amount set forth in Section 2.2(a) of the Asset Purchase Agreement Between Signature Styles, LLC, Signature Styles Gift Cards, LLC and Buyer (the "APA").[1]

---

[1] APA at 2.2 Assumption and Exclusion of Liabilities.

1978994.1

For purposes of this agreement, "Transaction Value" means the sum of: (i) any and all cash paid, directly or indirectly, for the assets, business or capital stock of the Company; (ii) the fair market value of any and all assets, securities or other property or rights transferred, directly or indirectly, in payment for the assets, business or capital stock of the Company, including, without limitation, payments to be made under noncompetition or similar arrangements and any deferred or contingent payments or potential payments, including under any earn-out or escrow arrangements; provided that the value of debt instruments for which there is no established trading market shall be the face amount thereof; (iii) the principal amount of any indebtedness for borrowed money (including capitalized lease obligations) appearing on the most recent balance sheet of the Company prior to the consummation of the Transaction; and (iv) the aggregate amount of any dividends or other distributions declared or paid by the Company with respect to its capital stock after the date of this agreement, other than normal recurring cash dividends in amounts not materially greater than currently paid. If, in lieu of receiving all or any portion of the type of consideration payable to the other shareholders of the Company in connection with a Transaction, any shareholder directly or indirectly retains an ownership interest in the Company or directly or indirectly acquires an ownership interest in the corporation or other entity surviving or resulting from the Transaction, the Transaction Value shall be calculated by assuming that such shareholder had sold his entire ownership interest in the Company and received in exchange therefor an amount per share equal to that received by the Company or the other shareholders of the Company, as the case may be, in the Transaction. The parties also acknowledge that the fee schedule agreed to by Western Reserve has been based on the assumption that the Company has no material contingent liabilities or other obligations not reflected in its financial statements ("Contingencies") that could adversely affect the Transaction Value. Accordingly, in the event the purchase price or other consideration proposed to be paid by a potential acquiror is directly or indirectly reduced due to any Contingencies, then the value attributed to any such Contingencies by the parties to the transaction shall be added back to the Transaction Value for the purposes of calculating the amount of any Incentive Fee payable to Western Reserve.

For purposes of determining the Transaction Value, the fair market value of any assets, securities, property or other rights shall be (i) in the case of securities for which there is an established trading market, the closing sale price of the securities on the trading day preceding the date of the closing of the Transaction, and (ii) in the case of any assets, securities other than those for which there is an established trading market, property or rights, as mutually agreed by Western Reserve and the Company; provided that, if the parties cannot so agree, they will choose a qualified appraiser of national standing to conclusively determine, at the Company's expense, the fair market value of such assets, securities, property or rights; and provided, further, that the value of debt instruments for which there is no

---

(a) Upon the terms and subject to the conditions of this Agreement, at the Closing, Buyer will assume only the following liabilities and obligations of Sellers (the "Assumed Liabilities"):

(i) the Pre-Petition Term and Revolver Obligations;

(ii) the DIP Facility Obligations;

(iii) all liabilities and obligations of each Seller under the Assumed Leases, the Assumed Contracts and the Post-Petition Contracts arising after the Closing Date.

(iv) any liabilities or obligations for wages, compensation, bonuses, deferred compensation, overtime, profit sharing benefits, workers' compensation, 401(k) matching, sick pay, vacation, personal days and severance pay benefits; and

(v) any liabilities or obligations under or in connection with any employee benefit or welfare plan (including any withdrawals thereunder and any claims of employees of Sellers and its eligible beneficiaries and dependents for medical, dental, prescription drug, life insurance, disability and other welfare benefits).

established trading market shall be the face amount thereof. Any information available to the Company for purposes of calculating the amount of any component of the Transaction Value shall be made available to Western Reserve by the Company upon request.

(e) <u>Expenses</u>. The Company will reimburse Western Reserve for all reasonable expenses incurred by Western Reserve in connection with the performance of its services under this agreement, including but not limited to reasonable fees and expenses of Western Reserve's legal counsel. Western Reserve will render invoices for such expenses to the Company on a quarterly basis during Western Reserve's engagement and at the conclusion of the engagement. The total amount of reimbursable expenses shall not exceed $10,000, unless agreed to by the Company.

All invoices will be due and payable within 30 days after date of issuance, except for those invoices related to the consummation of a Transaction, which are due and payable in full upon closing. The Company agrees to reimburse Western Reserve for all expenses, including but not limited to reasonable attorneys' fees, actually and reasonably incurred by Western Reserve in connection with enforcing the Company's obligation to pay Western Reserve for such fee or to reimburse Western Reserve for such expenses as provided by this agreement.

3. <u>Coordination; Access to Information</u>. The Company and its directors and executive officers will promptly inform Western Reserve of any inquiry they may receive concerning the possible acquisition of the Company or availability of all or a portion of the stock or assets of the Company for purchase. During the period of the engagement contemplated by this agreement, neither the Company nor any of its directors or executive officers will initiate any discussions with respect to a sale of the Company without first consulting Western Reserve.

The Company will provide Western Reserve with access to the Company's officers, directors, advisors and facilities and furnish or cause to be furnished to Western Reserve all information relating to the Company or the Transaction as Western Reserve reasonably deems necessary or appropriate in connection with its engagement. The Company hereby warrants to Western Reserve that all information provided to Western Reserve by the Company or its directors, officers, advisors or other representatives in connection with this engagement will be true and accurate in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made. The Company acknowledges and agrees that Western Reserve will be using publicly available information and information in reports and other materials provided by others, including information provided by or on behalf of the Company and any prospective purchaser, and that Western Reserve does not assume any responsibility for, and may rely without independent verification on the accuracy and completeness of, any such information, and that Western Reserve will not make an appraisal of any assets or liabilities of the Company or any prospective purchaser.

4. <u>Certain Acknowledgements</u>. The Company represents that it is a sophisticated business enterprise that has retained Western Reserve solely as an advisor for the limited purposes set forth in this agreement. The parties acknowledge and agree that their respective rights and obligations under this agreement are contractual in nature. Each party disclaims any intention to impose fiduciary obligations on the other by virtue of this agreement or the engagement contemplated hereby, and this agreement shall not be so construed. This agreement is solely for the benefit of the parties hereto, the indemnified persons described in Appendix A hereto, and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this agreement or the performance of any services in connection with the engagement contemplated by this agreement. No fee payable to any other financial advisor by the Company or any other company in connection with the subject matter of this engagement shall reduce or otherwise affect any fee payable to Western Reserve hereunder.

5. <u>Announcement</u>. If a Transaction is completed, Western Reserve may, at its option and expense, place advertisements or announcements in such newspapers, periodicals, mailings or other publications as it may choose, stating that Western Reserve acted as financial advisor to the Company in connection with the Transaction, subject in each case to the prior written consent of the Company.

6. <u>Indemnification, Contribution and Reimbursement</u>. The Company agrees to the provisions with respect to its indemnification of Western Reserve and the other matters set forth in Appendix A hereto, which is incorporated by reference into this agreement. The Company's agreements in this paragraph and Appendix A are a material inducement to Western Reserve's entering into this engagement.

7. <u>Term of Engagement</u>. Either Western Reserve or the Company may terminate Western Reserve's engagement hereunder at any time, with or without cause, by giving written notice of such termination to the other party. Upon any such termination, neither party will have any liability or continuing obligation to the other; provided, however, that: (i) the provisions of Appendix A to this agreement shall survive any such termination; (ii) the Company shall remain liable for Western Reserve's fees earned and expenses incurred through the date of such termination; and (iii) if a Transaction is consummated within twelve months of the termination of Western Reserve's engagement or if a definitive agreement with respect to a Transaction is entered into during such period and subsequently consummated, the Company shall be obligated to pay Western Reserve the Transaction Fee and Incentive Fee (as applicable) in accordance with the terms of this agreement.

8. <u>CHOICE OF LAW AND WAIVER OF JURY TRIAL</u>. Each of the parties hereto irrevocably (i) submits to the non-exclusive jurisdiction of any New York State or federal court sitting in the Borough of Manhattan in the City of New York in any action or proceeding arising out of or relating to this Agreement, if any, (ii) agrees that all claims in respect of such action or proceeding may be heard and determined in such New York State or federal court, (iii) waives, to the fullest extent it may legally do so, the defense of an inconvenient forum to the maintenance of such action or proceeding, (iv) consents to the service of any and all process in any action or proceeding by the mailing of copies of such process to it at the address specified for it in this Agreement and (v) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO AND ALL MATTERS ARISING OUT OF OR RELATING TO THIS AGREEMENT, IF ANY, SHALL BE CONSTRUED IN ACCORDANCE WITH AND BE GOVERNED BY THE LAW OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW). THE PARTIES HERETO HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

9. <u>Governing Law; Miscellaneous</u>. This agreement (which shall always be deemed to include all appendices hereto) shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflicts-of-law principles, and shall be binding upon and inure to the benefit of the Company, Western Reserve, the indemnified persons described in Appendix A, and their respective successors and assigns. This agreement may not be amended or modified except in a writing signed by an authorized officer of Western Reserve and the Company which specifically references this agreement. The paragraph headings used in this agreement are intended only for convenience of reference and shall be disregarded in interpreting its provisions. The use of any particular pronoun in this

Mr. Robert Angart
May 31, 2011
Page 5

agreement is not intended to be restrictive as to gender or number; rather, the masculine includes the feminine and neuter, the singular includes the plural, and vice-versa, as the context may require.

If the foregoing accurately sets forth the terms of our agreement, please sign in the space indicated below and return to us a duplicate copy of this letter, at which time this letter will become a mutually binding obligation.

Very truly yours,

WESTERN RESERVE PARTNERS LLC

Signed: _____
Mark A. Filippell
Managing Director

Agreed to as of the above date:

SIGNATURE STYLES, LLC

Signed: _____
Robert Angart
Chief Restructuring Officer

## APPENDIX A

## INDEMNIFICATION AND CONTRIBUTION

This Appendix A is a part of and incorporated into that certain letter agreement dated May 26, 2011 (the "Agreement") between Western Reserve Partners LLC ("Western Reserve") and Signature Styles, LLC (the "Company").

(a) If Western Reserve, any affiliate of Western Reserve, or any employee, agent, officer, director, manager, attorney, member or shareholder of Western Reserve or of any such affiliate (any or all of the foregoing, including Western Reserve, being hereinafter referred to as an "Indemnified Person") becomes involved in any capacity in any legal or administrative action, suit, proceeding, investigation or inquiry brought by or against any person, including securityholders of the Company, in connection with, arising out of, based upon, or in any way related to the engagement described in the Agreement, the Company periodically will reimburse each Indemnified Person for his legal and other expenses (including but not limited to the costs of any investigation and preparation) reasonably incurred in connection therewith upon presentation of appropriate statements therefore (such legal and other expenses, collectively, the "Legal Expenses"); provided, however, that if it is finally judicially determined by a court of competent jurisdiction in any such action, suit, proceeding, investigation or inquiry that any loss, claim, damage or liability of an Indemnified Person has resulted primarily and directly from the breach of the Agreement by, or the negligence or willful misconduct of, any Indemnified Person in performing the services which are the subject of the Agreement, such Indemnified Person shall repay such portion of the reimbursed amounts that is attributable to expenses incurred in relation to the act or omission of such Indemnified Person which is the subject of such holding. The Company also will indemnify and hold each Indemnified Person harmless from and against any losses, actions, claims, damages or liabilities (such losses, actions, claims, damages or liabilities, as the case may be, "Liabilities") which such Indemnified Person may suffer or incur in connection with any matter related to the engagement described in the Agreement, except to the extent that it is finally judicially determined by a court of competent jurisdiction that such loss, action, claim, damage or liability has resulted primarily and directly from the breach of Agreement by, or negligence or willful misconduct of, any Indemnified Person in performing the services that are the subject of the Agreement.

(b) If for any reason the foregoing indemnification is unavailable to an Indemnified Person or insufficient to hold him harmless, then the Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such Liabilities in such proportion as is appropriate to reflect (i) the relative benefits to the Company and its securityholders on the one hand, and Western Reserve and the other Indemnified Persons on the other hand, in connection with the transaction to which such exculpation, indemnification or reimbursement relates, or (ii) if allocation on that basis is not permitted by applicable law, to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of the Company, Western Reserve and the other Indemnified Persons with respect to such Liabilities and any other relevant equitable considerations; provided, however, that in no event shall the amount to be contributed by all Indemnified Persons in the aggregate exceed the amount of the fees received by Western Reserve under the Agreement.

(c) The Company shall be liable for any settlement of any claim against any Indemnified Person made with the Company's written consent, which consent shall not unreasonably be withheld. The Company shall not, without the prior written consent of Western Reserve, settle, compromise or discharge any claim or permit a default or consent to the entry of any judgment in respect thereof, unless such settlement, compromise, discharge or consent includes, as an unconditional term thereof, the giving by the claimant to Western Reserve and each Indemnified Person of an unconditional release from any and all liability in respect of such claim.

(d) Each Indemnified Person shall have the right to retain counsel of his own choice to represent such Indemnified Person in connection with any matter as to which the provisions of this Appendix A apply. The reimbursement, indemnity and contribution obligations of the Company under this Appendix A shall be in addition to any liability which the Company may otherwise have, and shall be binding upon and inure to the benefit of the respective successors, assigns, heirs and personal representatives of the Company and each Indemnified Person. No Indemnified Person shall have any liability to the Company or its securityholders for or in connection with any matter referred to in this Appendix A or elsewhere in the Agreement except to the extent that any losses, actions, claims, damages, liabilities or expenses incurred by the Company result primarily and directly from the breach of the Agreement by, or negligence or willful misconduct of, any Indemnified Person in performing the services that are the subject of the Agreement. The provisions of this Appendix A shall survive any termination, expiration or completion of the engagement provided by the Agreement.

(e) In the event a bankruptcy case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this agreement and (b) Western Reserve's retention by the Company under the terms of this agreement (including, without limitation, the reimbursement of the fees, disbursements and other charges of Western Reserve's counsel pursuant to Section [2] hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date the chapter 11 case was commenced, and shall use reasonable best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use reasonable best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in section 330 of the Bankruptcy Code. Each party hereto agrees that any dispute or claim for indemnification, contribution or reimbursement pursuant to the Agreement for services rendered under the Agreement or otherwise will be subject to the judgment of the Bankruptcy Court. Such right to seek indemnification shall not exist where the subject claim arises from the negligence, misrepresentations, breach of the Agreement or willful misconduct of Western Reserve. For the avoidance of doubt, Western Reserve shall have the right to seek indemnification, contribution or reimbursement from the Company pursuant to this Agreement subject to the limitations of this paragraph and any limitations set forth in the Order of the Bankruptcy Court approving Western Reserve's retention.