

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Signature Styles, LLC,[1] | ) | Case No. 11-11733 (KG) |
|     a Delaware limited liability company, | ) | |
| | ) | Joint Administration Pending |
|         Debtors. | ) | |
| | ) | RE: Docket No. 9 |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS
### TO OBTAIN POST-PETITION SECURED FINANCING,
### (II) GRANTING CERTAIN LIENS, (III) MODIFYING
### THE AUTOMATIC STAY AND (IV) SCHEDULING A FINAL HEARING

THIS MATTER having come before this Court upon the motion (the "DIP

Motion")[2] by Debtor Signature Styles, LLC (the "Borrower") and Debtor Signature Styles Gift

Cards, LLC (the "Guarantor" and, together with the Borrower, the "Debtors"), seeking, among

other things, entry of an interim order (this "Interim Order") authorizing, inter alia, the Debtors

to:

        (i)      obtain credit and incur and guarantee debt, pursuant to sections 363,

364(c) and 364(d) of title 11 of the United States Code (the "Bankruptcy Code"), on an interim

basis for a period (the "Interim Period") from the commencement of these cases (the "Chapter 11

Cases") through and including the date of the Final Hearing (as defined below) up to the

aggregate committed amount of $1,200,000.00 (on terms and conditions more fully described

herein) (A) secured by perfected and enforceable liens (as defined in section 101(37) of

chapter 11 of the Bankruptcy Code) comprised of (1) pursuant to section 364(c)(2) of the

---

[1]      The Debtors in these chapter 11 cases, and the last four digits of their respective tax identification numbers, are: Signature Styles, LLC (4502) and Signature Style Gift Cards, LLC (8699). The location of the Debtors' corporate headquarters is: 711 Third Avenue, 4th Floor, New York, New York 10017..

[2]      Capitalized terms used, but not otherwise defined, herein shall have those meanings ascribed to them in the DIP Credit Agreement (as defined below).

Bankruptcy Code, a first priority lien on all tangible and intangible property of each Debtor that, as of the Petition Date (as defined below), is not subject to any Liens other than avoidable liens; (2) pursuant to section 364(c)(3) of the Bankruptcy Code, a lien upon all tangible and intangible property of each Debtor that is subject to an unavoidable Lien in existence as of the Petition Date other than the Pre-Petition Liens, such lien to be junior only to such unavoidable Liens; (3) pursuant to section 364(d)(1) of the Bankruptcy Code, a lien on all tangible and intangible property of the Debtors subject to the Pre-Petition Liens, such lien to be junior only to the Permitted Prior Liens and (B) with priority over any and all administrative expenses as provided in section 364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein;

(ii)  (a) enter into that financing arrangement (the "DIP Facility") pursuant to (I) that certain Debtor-In-Possession Credit Agreement (the "DIP Credit Agreement"), substantially in the form attached hereto as Exhibit A and incorporated herein by reference, by and among the Debtors, Patriarch Partners Agency Services, LLC (the "DIP Agent"), and the lenders party thereto (the "DIP Lenders," and collectively with the DIP Agent, the "DIP Secured Parties"), and (II) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of the DIP Secured Parties, including, without limitation, the Guaranty, securities agreements, notes, mortgages, and Uniform Commercial Code ("UCC") financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified or supplemented and in effect from time to time, the "DIP Credit Documents"); and (b) incur the "Obligations" under and as defined in the DIP Credit Agreement (collectively, the "DIP Obligations");

DLI-6356704v7
1985365.1

(iii)     use the proceeds of the DIP Facility in a manner consistent with the terms and conditions of the DIP Credit Documents, and in accordance with the Budget (as defined below), subject to the Permitted Budget Variance (as defined below), solely for (a) general corporate purposes, (b) payment of costs of administration of the Chapter 11 Cases, to the extent set forth in the Budget, (c) payment of interest and fees under the DIP Credit Documents and (d) payment of the costs and expenses of the DIP Agent in connection with the Chapter 11 Cases.

(iv)     grant, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, the DIP Agent (for the benefit of the DIP Secured Parties) (a) a first priority, valid, perfected and enforceable lien on the Debtors' unencumbered property, (b) a lien on the Debtors' property that is subject to an unavoidable Lien in existence as of the Petition Date other than the Pre-Petition Liens, such lien to be junior only to such unavoidable Liens and (c) a first priority lien on the property of the Debtors' estates that is subject to the Pre-Petition Liens (subject only to the Permitted Prior Liens), all as provided in and as contemplated by this Interim Order, the DIP Facility and the DIP Credit Documents; and

(v)     grant, pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Agent (for the benefit of the DIP Secured Parties) superpriority administrative claim status in respect of all DIP Obligations.

The Debtors also request that the Court:

(i)     Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Credit Documents and this Interim Order;

3

(ii)     Schedule a final hearing (the "Final Hearing") to consider entry of an order (the "Final Order") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing; and

(iii)     Waive the 14 day stay provisions of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

The Court having considered the DIP Motion, the Declaration of Robert Angart in Support of First Day Relief, the DIP Facility and the DIP Credit Agreement and the evidence submitted at the hearing on this Interim Order (the "Interim Hearing"); and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the local rules of the Court; due and proper notice of the DIP Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and is essential for the continued operation of the Debtors' business; and it further appearing that the Debtors are unable to secure unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; and there is adequate protection of the interests of holders of liens on the property of the estates on which liens are to be granted; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     **Petition Date**. On June 6, 2011 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy

Code. No trustee, examiner or creditors' committee has been appointed in these cases. The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. **Jurisdiction and Venue**. This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Committee Formation**. A statutory committee of unsecured creditors has not yet been appointed in the Chapter 11 Cases.

D. **Notice**. The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001-2. Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery to certain parties in interest, including: (i) the Office of the United States Trustee; (ii) the Debtors' twenty largest unsecured creditors on a consolidated basis; (iii) counsel to the Pre-Petition Agent (as defined below) and the proposed DIP Agent; and (iv) all secured creditors of record. Under the circumstances, such notice of the Interim Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the local rules of the Court.

E. **Debtors' Acknowledgements and Agreements**. Without prejudice to the rights of parties in interest as set forth in paragraph 5 below, the Debtors admit, stipulate, acknowledge

DLI-6356704v7
1985365.1

and agree that (collectively, paragraphs E (i) through E (viii) hereof shall be referred to herein as the "Debtors' Stipulations"):

      **(i)**    **Pre-Petition Credit Agreements**. Prior to the Petition Date, the Debtors were party to (A) that certain Credit Agreement (as amended, modified or supplemented and in effect from time to time, the "Pre-Petition Credit Agreement"), dated as of June 12, 2009, by and among the Debtors, Patriarch Partners Agency Services, LLC ("PPAS"), as administrative agent (in such capacity, the "Pre-Petition Agent"), and the lenders party thereto (collectively, the "Pre-Petition Lenders" and collectively with the Pre-Petition Agent, the "Pre-Petition Secured Parties"), and (B) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of the Pre-Petition Secured Parties, including, without limitation, notes, security agreements, pledge agreements, and UCC financing statements and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified or supplemented and in effect from time to time, collectively, the "Pre-Petition Loan Documents").

      **(ii)**    **Pre-Petition Collateral**. To secure the Pre-Petition Debt (as defined below), the Debtors granted security interests and liens (the "Pre-Petition Liens") to the Pre-Petition Agent, for itself and for the benefit of the other Pre-Petition Secured Parties, upon substantially all of the Debtors' property and assets, including, without limitation, equipment, inventory, capital stock (other than certain capital stock of foreign subsidiaries), accounts, deposit accounts, chattel paper, promissory notes, trademarks, copyrights, patents, other intellectual property and commercial tort claims and the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all such collateral (each as defined in the Pre-Petition Loan Documents) (collectively, the "Pre-Petition Collateral"), with priority over all other liens except any senior liens otherwise permitted by the Pre-Petition Loan Documents or applicable law (the "Pre-Petition Permitted Liens").[3]

      **(iii)**    **Pre-Petition Debt.** As of the Petition Date, the Debtors owed obligations to the Pre-Petition Secured Parties under the Pre-Petition Credit Agreement of at least $37.24 million for outstanding term and revolving loans, advances and/or financial accommodations (the "Pre-Petition Debt").

      **(iv)**    **Pre-Petition Liens and Debt.** As of the Petition Date, (i) the Pre-Petition Liens are valid, binding, enforceable, and perfected liens, subject only to any other lien expressly permitted by the Pre-Petition Loan Documents or applicable

---

[3]    The acknowledgment and agreement by the Debtors of the Pre-Petition Debt and the related liens, rights priorities and protections granted to or in favor of the Pre-Petition Secured Parties, as set forth herein and in the Pre-Petition Loan Documents, shall constitute a proof of claim on behalf of the Pre-Petition Lenders in these Chapter 11 Cases.

DLI-6356704v7
1985365.1

law and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (ii) the Pre-Petition Debt constitutes a legal, valid and binding obligation of the Debtors, enforceable in accordance with the terms of the Pre-Petition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Debt exist, and no portion of the Pre-Petition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(v)     **Releases, Waivers and Acknowledgments**.  Each Debtor hereby (i) releases and discharges the Pre-Petition Secured Parties, together with each of their respective affiliates, agents, attorneys, members, officers, directors and employees (collectively, the "Protected Parties") from any and all claims and causes of action arising out of, based upon, or related to, in whole or in part, the Pre-Petition Loan Documents, any aspect of the prepetition relationship between, or among, the Protected Parties and the Debtors, or any other acts or omissions of the Protected Parties in connection with any of the Pre-Petition Loan Documents or their prepetition relationship with the Debtors, including, without limitation, any avoidance action available under Chapter 5 of the Bankruptcy Code (or under section 502(d) of the Bankruptcy Code); (ii) waives any and all claims and/or defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, first priority, enforceability and avoidability (under the Bankruptcy Code or otherwise) of the Pre-Petition Debt and Pre-Petition Liens; and (iii) agrees, without further Court order and without the need for filing of any proof of claim, to the allowance of the prepetition, secured claims of the Pre-Petition Secured Parties pursuant to sections 502 and 506 of the Bankruptcy Code on account of such indebtedness.

(vi)    **Priming of DIP Facility**.  The Debtors hereby agree that (a) until such time as all DIP Obligations are indefeasibly paid in full in cash (or otherwise satisfied according to such terms as may be mutually agreed among the Debtors and the DIP Secured Parties) and the DIP Credit Documents are terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Secured Parties under this Interim Order by offering a subsequent lender or a party-in-interest a superior or pari passu lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

(viii)  **Default by the Debtors**.  Certain "Events of Default" under and as defined in the Pre-Petition Credit Agreements have occurred and continue to exist (the "Existing Defaults").  As a result of the Existing Defaults, the Pre-Petition Secured Parties have no further obligations to make advances to the Debtors under the Pre-Petition Credit Agreements and, subject to the stay of enforcement arising from section 362 of the Bankruptcy Code, are entitled to exercise their rights and remedies under the Pre-Petition Loan Documents.

DLI-6356704v7
1985365.1

F.    **Findings Regarding the Post-Petition Financing**.

(i)    **Need for Post-Petition Financing**. An immediate need exists for the Debtors to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of their estate. The ability of the Debtors to finance their operations, to preserve and maintain the value of the their assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors and the possibility for a successful sale of the Debtors' assets as a going concern.

(ii)    **No Credit Available on More Favorable Terms**. The Debtors represent that they were unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors represent that they were also unable to obtain secured credit, allowable only under sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Interim Order. The Debtors represent that they were unable to obtain credit for borrowed money without granting to the DIP Secured Parties the DIP Protections (as defined below).

G.    **Use of Proceeds of the DIP Facility**. Proceeds of the DIP Facility shall be used in each case in a manner consistent with the terms and conditions of the DIP Credit Agreement, and in strict compliance with the Budget, subject to the Permitted Budget Variance, solely for (a) general corporate purposes, (b) payment of costs of administration of the Chapter 11 Cases, to the extent set forth in the Budget, (c) payment of interest and fees under the DIP Credit Documents and (d) payment of the costs and expenses of the DIP Agent in connection with the Chapter 11 Cases.

H.    **Extension of Financing**. The DIP Lenders have indicated a willingness to provide financing to the Borrower in accordance with the DIP Credit Agreement and subject to (i) the entry of this Interim Order and a Final Order, and (ii) findings by the Court that such financing is essential to the Debtors' estates, that the DIP Lenders are good faith financiers, and that the DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

I.    **Business Judgment and Good Faith Pursuant to Section 364(e)**. (i) The terms and conditions of the DIP Facility and the DIP Credit Agreement, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Facility and this Interim Order were negotiated in good faith and at arm's length between the Debtors, the DIP Secured Parties and the Pre-Petition Secured Parties; and (iii) use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

J.    **Relief Essential; Best Interest**. The relief requested in the DIP Motion is necessary, essential and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets and personal property. It is in the best interest of Debtors' estates to be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement.

9

K.  **Entry of Interim Order**.  For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the DIP Motion of the Debtors and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Pre-Petition Secured Parties and the DIP Secured Parties to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.  **Motion Granted**.  The DIP Motion is granted on an interim basis in accordance with the terms and conditions set forth in this Interim Order and the DIP Credit Agreement.

2.  **DIP Credit Documents**

(a)  **Approval of Entry Into DIP Credit Documents**.  The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Credit Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Credit Documents, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Credit Documents.  The Debtors are hereby authorized to do and perform all acts, and subject to the provisions of this Interim Order, pay the principal, interest, fees, expenses and other amounts described in the DIP Credit Agreement and all other DIP Credit Documents as such become due, including, without limitation, closing fees, facility fees and reasonable attorneys', financial advisors' and accountants' fees and disbursements as provided for in the DIP Credit Agreement, which amounts shall not otherwise be subject to approval of this Court; provided, however, that unresolved disputes as to the

10

reasonableness of any professional fees and expenses may be determined by the Court, as provided herein. Upon execution and delivery, the DIP Credit Documents shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

(b)  **Authorization to Borrow and Guarantee Debt**.  In order to enable it to continue to operate its business during the Interim Period, and subject to the terms and conditions of this Interim Order, the DIP Credit Agreement, the other DIP Credit Documents and the Budget, the Borrower is hereby authorized under the DIP Facility to borrow up to a total committed amount of $1,200,000.00 on an interim basis. The Guarantor is hereby authorized to immediately guarantee the prompt payment and performance of the DIP Obligations that are incurred pursuant to this Interim Order, the DIP Credit Agreement and the DIP Credit Documents.

(c)  **Application of DIP Proceeds**.  The proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Credit Agreement) shall be used in each case in a manner consistent with the terms and conditions of the DIP Credit Documents and in accordance with the Budget, subject to the Permitted Budget Variance, solely for (a) general corporate purposes, (b) payment of costs of administration of the Chapter 11 Cases, to the extent set forth in the Budget, (c) payment of interest and fees under the DIP Credit Documents and (d) payment of the costs and expenses of the DIP Agent in connection with the Chapter 11 Cases.

(d)  **Conditions Precedent**.  The DIP Lenders shall have no obligation to make any loan or advance under the DIP Credit Agreement during the Interim Period unless the

conditions precedent to make such loan under the DIP Credit Agreement have been satisfied in full or waived by the DIP Lenders in their sole discretion.

(e) **Post-Petition Liens**. Effective immediately upon the entry of this Interim Order, the DIP Secured Parties are hereby granted, pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (1) a first priority valid, perfected and enforceable lien on the Debtors' unencumbered property, (2) a lien on the Debtors' property that is subject to unavoidable Liens in existence as of the Petition Date other than the Pre-Petition Liens, having a priority that is junior only to such unavoidable Liens and (3) a first priority lien on all of the Debtors' property that is subject to a Pre-Petition Lien (junior only to the Permitted Prior Liens) (collectively, the "DIP Liens") senior in priority to all other secured and unsecured creditors of the Debtors' estates except as otherwise provided in this Interim Order and the Final Order, upon and to all presently owned and hereafter acquired interest in all assets and real and personal property of the Debtors (collectively, the "Collateral"); provided, however, that the Collateral shall not include any avoidance action under Chapter 5 of the Bankruptcy Code or the proceeds thereof, other than proceeds of any avoidance action brought pursuant to section 549 of the Bankruptcy Code to recover any unauthorized postpetition transfer of collateral.

(f) **DIP Lien Priority**. The DIP Liens created pursuant to the DIP Credit Documents and this Interim Order and granted to the DIP Secured Parties, as provided herein, are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and are comprised of (i) a first priority lien on all tangible and intangible property of each Debtor that, as of the Petition Date is not subject to any Liens other than avoidable liens, (ii) a lien upon all tangible and intangible property of each Debtor that is subject to unavoidable Liens in existence as of the Petition Date other than the Pre-Petition Liens, having a priority that is junior only to

12

such unavoidable Liens and (iii) a lien upon all tangible and intangible property of each Debtor subject to the Pre-Petition Liens, such lien to be junior only to the Permitted Prior Liens. The DIP Liens shall secure all DIP Obligations. Except as provided herein, the DIP Liens shall not be made subject to or pari passu with any lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "Successor Cases"), and/or upon the dismissal of any of the Chapter 11 Cases. The DIP Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code, or if approved in the Final Order, section 506(c) of the Bankruptcy Code.

(g) **Enforceable Obligations**. The DIP Credit Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors, in accordance with their terms.

(h) **Protection of DIP Lenders and Other Rights**. From and after the Petition Date, the Borrower shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Credit Agreement and this Interim Order and in strict compliance with the Budget.

(i) **Superpriority Administrative Claim Status**. Except as set forth herein, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "DIP Superpriority Claim" and, together with the DIP Liens, the "DIP Protections") with priority in all of the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and

DLI-6356704v7
1985365.1

their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising under, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b), 1113 and 1114 of the Bankruptcy Code, and, if approved in the Final Order, section 506(c) of the Bankruptcy Code; provided, however, that the DIP Superpriority Claim shall not attach to the proceeds of any avoidance action under chapter 5 of the Bankruptcy Code, other than proceeds of any avoidance action brought pursuant to section 549 of the Bankruptcy Code to recover any unauthorized postpetition transfer of Collateral. No costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder.

3. **Authorization to Use Proceeds of DIP Credit Documents**. Pursuant to the terms and conditions of this Interim Order, the DIP Facility and the DIP Credit Agreement, and in accordance with the budget attached hereto as Exhibit B (as the same may be modified from time to time consistent with the terms of the DIP Credit Agreement, the "Budget"), the Borrower is authorized to use the advances under the DIP Credit Agreement during the period commencing immediately after the entry of the Interim Order and terminating upon the Maturity Date (as defined below). Without the DIP Agent's prior written consent, the Borrower is not authorized to make or incur any expenditures except in accordance with the Budget and this Interim Order, provided, however, that, (i) as of each week, for any period from the Petition Date through the Friday of the most recent week then ended (such period being the "Cumulative Period"), the

14

Actual Net Receipts and Disbursements Amount shall be not less than 90% of the Budgeted Receipts and Disbursements Amount for the corresponding period in the Budget (the "Permitted Budget Variance"). Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or other proceeds resulting therefrom, except as permitted in the DIP Facility and the DIP Credit Agreement and in accordance with the Budget, subject in each case to further order of the Court.

4. **Post-Petition Lien Perfection**. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Liens or to entitle the DIP Lenders to the priorities granted herein. Notwithstanding the foregoing, the DIP Agent may, in its sole discretion, file such financing statements, mortgages, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases. The Debtors shall execute and deliver to the DIP Agent all such financing statements, mortgages, notices and other documents as the DIP Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens granted pursuant hereto. The DIP Agent, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in

15

which any Debtor has real or personal property, and in such event the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

5.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims.**  Nothing in this Interim Order or the DIP Credit Agreement shall prejudice whatever rights any official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee") or any other party in interest with requisite standing (other than the Debtors) may have (a) to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the mortgage, security interests and liens of the Pre-Petition Secured Parties in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Debt, or (b) to bring suit against any of the Pre-Petition Secured Parties in connection with or related to the Pre-Petition Debt, or the actions or inactions of any of the Pre-Petition Secured Parties arising out of or related to the Pre-Petition Debt; provided, however, that, upon entry of, and in accordance with the terms of, the Final Order, the Debtors' admissions, stipulations and releases contained in this Interim Order and the Final Order shall be binding upon all parties in interest, including any Creditors' Committee, for all purposes unless (1) the Creditors' Committee or any other party in interest with standing commences a contested matter or adversary proceeding by no later than the earlier of (a) two business days prior to the bid deadline established by an order of this Court or (b) 75 days after the Petition Date (the "Challenge Deadline"), challenging the amount, validity, enforceability, priority or extent of the Pre-Petition Debt or the Pre-Petition Secured Parties' security interest in and lien upon the Pre-Petition Collateral or otherwise asserting any claims or causes of action against the Pre-Petition Lenders on behalf of the Debtors' estates, and (2) the Court rules in favor of the plaintiff in any

16

such filed adversary proceeding or contested matter. Notwithstanding the foregoing, if prior to the Challenge Deadline a chapter 11 trustee is appointed in these Cases or these Cases are converted to cases under chapter 7, the Challenge Deadline applicable to the chapter 7 trustee or the chapter 11 trustee shall be the later of the foregoing deadline and 10 days following the appointment of the chapter 11 trustee or the chapter 7 trustee. If no such adversary proceeding or contested matter is properly filed within the requisite time period or the Court does not rule in favor of the plaintiff in any such proceeding: (a) the Debtors' admissions, stipulations and releases contained in this Final Order shall be binding on all parties in interest, including any Creditors' Committee; (b) the obligations of the Debtors under the Pre-Petition Loan Documents shall constitute allowed claims for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (c) the Pre-Petition Lenders' security interests in and liens upon the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (d) the Pre-Petition Debt and the Pre-Petition Lenders' security interests in and liens on the Pre-Petition Collateral shall not be subject to any other or further challenge by any Creditors' Committee or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such adversary proceeding or contested matter is filed within the requisite time period, the Debtors' admissions, stipulations and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph), except to the extent that such admissions and releases were challenged in such adversary proceeding or contested matter. Pursuant to this Interim Order, any Creditors' Committee shall be deemed to have standing to commence any such adversary proceeding or contested matter without further

17

Court order, provided, however, that nothing contained in this Interim Order shall be deemed to grant standing to any other party to commence any such adversary proceeding or contested matter.

6.      **Termination Date Loans.**  On the earlier to occur of (i) the Maturity Date, (ii) the date of the termination of the Commitments pursuant to Section 8.2 of the DIP Credit Agreement, (iii) the conversion of either of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code and (iv) the date following any period of three consecutive Business Days in which the DIP Lenders and the DIP Agent have denied the Borrower's requests to fund Loans to be used to pay Professional Fees and Expenses as a result of an Event of Default, (collectively, the "Termination Date"), the Borrower shall be deemed to have requested (i) a Loan in an aggregate amount equal to the accrued and unpaid Professional Fees and Expenses of Borrower's counsel, less any remaining retainer then held by Borrower's counsel on account of Professional Fees and Expenses incurred in connection with the Chapter 11 Cases, plus $25,000, (ii) if a Creditors' Committee exists, a Loan in an aggregate amount equal to the accrued and unpaid Professional Fees and Expenses of the Creditors' Committee, plus $15,000, (iii) a Loan in an aggregate amount equal to the accrued and unpaid United States Trustee fees or Court fees payable pursuant to 28 U.S.C. § 1930 and (iv) a Loan in an aggregate amount equal to the accrued and unpaid Professional Fees and Expenses of counsel to the DIP Agent and the DIP Lenders (collectively, the "Termination Date Loans").  The Borrower shall not be required to provide a Borrowing Certificate or otherwise comply with the requirements set forth in Sections 2.2 or Section 3.2 of the DIP Credit Agreement in connection with the Termination Date Loans (other than Sections 3.2(e) and (f) of the DIP Credit Agreement) and the DIP Lenders hereby agree to make such Termination Date Loans notwithstanding Borrower's failure to comply with

DLI-6356704v7
1985365.1

such sections so long as the conditions precedent in Sections 3.2(e) and (f) of the DIP Credit Agreement have been satisfied. The proceeds of the Termination Date Loans (other than proceeds of the Termination Date Loans described in clause (iv) immediately above) shall be deposited directly into the Professional Fee Account and the proceeds of the Termination Date Loans described in clause (iv) immediately above shall be deposited directly into an account designated by counsel to the DIP Agent and the DIP Lenders.

Professional Fees and Expenses of Borrower's counsel and the Creditors' Committee that are allowed by order of the Court but are unpaid, or are incurred after the Termination Date in an amount up to $25,000 for Debtors' counsel, and $15,000 for the Creditors' Committee, shall be paid to Debtors' counsel or the Creditors' Committee's professionals, as applicable, from the Professional Fee Account. The amounts due for any quarter commencing on or before the Termination Date pursuant to 28 U.S.C. § 1930 shall be paid to the United States Trustee, and any Court fees due and payable pursuant to 28 U.S.C. § 1930 shall be paid to the Clerk of the Court from the Professional Fee Account. Any proceeds of the Termination Date Loans in excess of the Professional Fees and Expenses that are paid pursuant to the preceding sentences shall be returned to the DIP Lenders. In no event shall the aggregate amount of Loans used to pay Professional Fees and Expenses exceed $1,400,000.

7.      **Payment of Compensation**.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Creditors' Committee or of any person or shall affect the right of the DIP Secured Parties to object to the allowance and payment of such fees and expenses or to permit the Borrowers to pay any such amounts not set forth in the Budget.

19

8.    **Section 506(c) Claims.**  Subject to entry of the Final Order, as a further condition of the DIP Facility, the Debtors (and any successor thereto or any representative thereof, including any trustees appointed in these cases or any successor cases) shall be deemed to have waived any rights, benefits or causes of action under section 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Agent, the DIP Secured Parties, the DIP Collateral and the DIP Liens.  Nothing contained in this Interim Order shall be deemed a consent by the DIP Secured Parties to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

9.    **Collateral Rights.**  Unless the DIP Agent has provided its prior written consent or all the DIP Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), and all commitments to lend have terminated, there shall not be entered in these proceedings, or in any Successor Case, any order that authorizes any of the following:

(a)    Except as permitted in the DIP Credit Agreement, the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or entitled to priority administrative status that is equal or senior to those granted to the DIP Secured Parties; or

(b)    Absent approval of this Court on notice to the DIP Agent, relief from stay by any person other than the DIP Secured Parties on all or any portion of the Collateral; or

(c)    The Debtors' return of goods constituting Collateral pursuant to section 546(h) of the Bankruptcy Code, except as permitted in the DIP Credit Agreement.

10.   **Maturity Date**.  All (a) DIP Obligations of the Debtors to the DIP Lenders shall be immediately due and payable (subject to the provisions of this Interim Order) and (b)

20

authority to use the proceeds of the DIP Credit Documents shall cease, both on the date that is the earliest to occur of (i) the date on which a sale of all or substantially all of the Debtors' assets is consummated or (ii) August 15, 2011.

11.     **Disposition of Collateral**.  The Debtors may not effectuate any disposition of assets or enter into any agreement to dispose of any assets other than the sale to Artemiss, LLC, or any higher or better bidder, pursuant to Section 363 of the Bankruptcy Code, any sales of the Debtors' inventory in the ordinary course of business, and such other sales and dispositions consented to by the DIP Agent that are approved by the Court.

12.     **Events of Default.**  The occurrence of any of the following events shall constitute an "Event of Default" under this Interim Order:

(a)     Failure by any of the Debtors to comply with any term of this Interim Order; or

(b)     The occurrence of any Event of Default, as defined in the DIP Credit Agreement, including the following:

- The failure of the Debtors to file with this Court on the Petition Date a motion seeking entry of an order approving bidding procedures for the 363 Asset Sale, in form and substance acceptable to the DIP Agent (the "Bidding Procedures Order");

- The failure of the Debtors to file with this Court on the Petition Date a motion seeking entry of an order approving the Stalking Horse Agreement in form and substance acceptable to the DIP Agent (the "Sale Approval Order");

- The failure of this Court to (i) enter the Bidding Procedures Order on or before June 30, 2011 or (ii) enter the Sale Approval Order on or before August 4, 2011;

- The failure of this Court to enter a Final DIP Order in form and substance satisfactory to the DIP Agent and the DIP Lenders by June 30, 2011; and

- The entry of an order by this Court approving the sale of any material

21

assets of the Debtors to a purchaser other than Artemiss, LLC. Unless and until the DIP Obligations are irrevocably repaid in full, all commitments to lend under the DIP Facility have irrevocably terminated, and all DIP Obligations that survive termination obligations have been cash collateralized to the reasonable satisfaction of the DIP Agent, the protections afforded to the DIP Secured Parties pursuant to this Interim Order and under the DIP Credit Agreement, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting the Chapter 11 Cases into Successor Cases, and the DIP Liens and the DIP Superpriority Claim shall continue in these proceedings and in any Successor Case, and such DIP Liens and DIP Super-Priority Claim shall maintain their priority as provided by this Interim Order.

       13.    **Rights and Remedies Upon Event of Default.**

       (a)    As a condition precedent to the DIP Secured Parties' exercise of any rights or remedies under the DIP Credit Agreement or this Interim Order (an "Enforcement Action"), the DIP Agent shall provide written notice of its intention to commence an Enforcement Action to the Debtors, counsel for the Creditors' Committee, if any, and the U.S. Trustee (any such notice, an "Enforcement Notice"). Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified so that after the occurrence of any Event of Default and at any time thereafter upon 3 business days prior notice of such occurrence, in each case given to each of the Debtors, counsel for the Creditors' Committee, if any, and the U.S. Trustee, the DIP Secured Parties shall be entitled to exercise their rights and remedies in accordance with this Interim Order and the DIP Credit Documents; provided, that the DIP Secured Parties' only rights and remedies with respect to an Event of Default under Section 8.1(n)(xv) of the DIP Credit Agreement as a result of the entry of an order by the Court approving the sale of any material asset of the Debtors to a purchaser other than Artemiss, LLC shall be limited, for a period of 30

DLI-6356704v7
1985365.1

days from the date of such order, to the right to (i) declare the unpaid principal amount of the loans made under the DIP Credit Agreement and interest accrued thereon and all other obligations under the DIP Credit Documents to be immediately due and payable and (ii) declare the loan commitments of the DIP Secured Parties under the DIP Credit Agreement terminated. Following the giving of any Enforcement Notice, the Debtors shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether an Event of Default has occurred. If the Debtors do not contest the right of the DIP Secured Parties to exercise their rights and remedies based upon whether an Event of Default has occurred within such time period, or if the Debtors do timely contest the occurrence of an Event of Default and this Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such notice period.

(b) The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Credit Agreement and this Interim Order as necessary to (1) permit the Debtors to grant the DIP Liens and to incur all liabilities and obligations to the DIP Lenders under the DIP Credit Documents, the DIP Facility and this Interim Order and (2) authorize the DIP Lenders to retain and apply payments hereunder in accordance with the provisions of this Interim Order.

(c) Nothing included herein shall prejudice, impair or otherwise affect the DIP Secured Parties' right to seek any other or supplemental relief in respect of the Debtors nor the DIP Agent's or DIP Lenders' rights, as provided in the DIP Credit Agreement, to suspend or terminate the making of loans under the DIP Credit Agreement following the occurrence of an Event of Default; provided, that nothing herein shall abrogate the DIP Lenders' agreement to

DLI-6356704v7
1985365.1

make the Termination Date Loans in accordance with paragraph 6 hereof and paragraph 2.1(d) of the DIP Credit Agreement.

14. **Proofs of Claim**. The Pre-Petition Secured Parties and the DIP Lenders will not be required to file proofs of claim in these Chapter 11 Cases or any Successor Case. The Pre-Petition Secured Parties are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) aggregate proofs of claim in the Chapter 11 Cases or any Successor Case. Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition Secured Parties.

15. **Other Rights and Obligations**.

(a) **Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order**. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the DIP Secured Parties hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Protections granted to the DIP Secured Parties shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP

24

Protections granted herein, with respect to any such claim. Since the loans made pursuant to the DIP Credit Agreement and this Interim Order are made in reliance on this Interim Order, the obligations owed the DIP Secured Parties prior to the effective date of any stay, modification or vacation of this Interim Order cannot, as a result of any subsequent order in the Chapter 11 Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Secured Parties under this Interim Order and/or the DIP Credit Documents.

(b)     **Expenses**.  As provided in the DIP Credit Documents, but subject to the provisions of this Interim Order, all reasonable costs and expenses of the DIP Secured Parties in connection with the DIP Credit Documents, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses will be paid by the Borrower, whether or not the transactions contemplated hereby are consummated.  The DIP Secured Parties shall provide to the U.S. Trustee and counsel to any Creditors' Committee (the "Fee Notice Parties"), on a monthly basis, the total amount of professional fees and expenses incurred by the DIP Secured Parties per calendar month in the Chapter 11 Cases, along with the invoices relating to such fees and expenses.  Under no circumstances shall professionals for the DIP Secured Parties or Pre-Petition Secured Parties be required to comply with the U.S. Trustee fee guidelines.  In the event any of the Fee Notice Parties object to the DIP Secured Parties' fees or expenses, or any portion thereof, such objecting Fee Notice Party shall send written notice of such objection to the DIP Secured Parties within ten days of receipt of the invoice.  Any unresolved objection shall be resolved by

DLI-6356704v7
1985365.1

the Court after notice and hearing. Absent any objections, the Borrower shall pay the DIP Secured Parties' requested fees and expenses within five days of receipt of the invoices.

(c) **Binding Effect**. The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Secured Parties, the Pre-Petition Secured Parties, the Debtors and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any Successor Cases or upon dismissal of any such chapter 11 or chapter 7 case.

(d) **No Waiver**. The failure of the DIP Secured Parties or any Pre-Petition Secured Party to seek relief or otherwise exercise their rights and remedies under the DIP Credit Documents, the DIP Facility, the Pre-Petition Loan Documents, this Interim Order or otherwise, as applicable, shall not constitute a waiver of any of the DIP Secured Parties' or Pre-Petition Secured Parties' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, does not constitute a waiver of, expressly or implicitly, and does not otherwise impair the DIP Secured Parties or the Pre-Petition Secured Parties under the Bankruptcy Code or under non-bankruptcy law in respect to, without limitation, (i) the rights of the DIP Secured Parties and the Pre-Petition Secured Parties to (a) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases, or (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan or (ii) any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties and the Pre-Petition Secured Parties.

DLI-6356704v7
1985365.1

(e) **No Third Party Rights**. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

(f) **No Marshaling**. Subject to entry of the Final Order, neither the Pre-Petition Agent nor the DIP Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

(g) **Section 552(b)**. Subject to entry of the Final Order, the DIP Secured Parties and the Pre-Petition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or Pre-Petition Secured Parties with respect to proceeds, product, offspring or profits of any of the Collateral.

(h) **Amendment**. The Debtors and the DIP Agent may amend or waive any provision of the DIP Credit Documents, provided that such amendment or waiver, in the judgment of the Debtors and the DIP Agent, is either non-prejudicial to the rights of third parties or is not material. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of all the Debtors, the Pre-Petition Agent and the DIP Agent and approved by the Court.

(i) **Survival of Interim Order**. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order (i) confirming any Plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court. The terms and provisions

DLI-6356704v7
1985365.1

of this Interim Order, including the DIP Protections granted pursuant to this Interim Order and the DIP Credit Documents, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by this Interim Order until all the obligations of the Debtors to the DIP Lenders pursuant to the DIP Credit Documents and this Interim Order have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility or this Interim Order that survive such discharge by their terms). The Debtors shall not propose or support any Plan that is not conditioned upon the payment in full and in cash of all of the DIP Obligations, on or prior to the earlier to occur of (i) the effective date of such Plan or (ii) the Maturity Date.

(j)     **Inconsistency**. In the event of any inconsistency between the terms and conditions of the DIP Credit Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

(k)     **Enforceability**. This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable nun pro tunc to the Petition Date immediately upon execution hereof.

(l)     **Objections Overruled**. All objections to the DIP Motion, to the extent not withdrawn or resolved, are hereby overruled.

(m)     **No Waivers or Modification of Interim Order**. The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent.

DLI-6356704v7
1985365.1

(n)    **Waiver of the Fourteen (14) Day Stay Under Bankruptcy**

**Rule 6004(h)**.  The fourteen (14) day stay provisions of Bankruptcy Rule 6004(h) are waived

and shall not apply to this Interim Order.

16.    **Final Hearing.**

(a)    The Final Hearing to consider entry of the Final Order and final approval

of the DIP Facility is scheduled for ___*June 30*___, **2011** at

___*3:30 p*___m (prevailing Eastern time) at the United States Bankruptcy Court for the District

of Delaware, Wilmington, Delaware.

(b)    On or before the second business day after entry of this Interim Order, the

Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this

Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this

Interim Order and the DIP Motion, on:  (a) the parties having been given notice of the Interim

Hearing; (b) any party which has filed prior to such date a request for notices with this Court;

(c) counsel for any Creditors' Committee (once it is formed); (d) the Office of the United States

Trustee; (e) the Internal Revenue Service; (f) the Office of the United States Attorney for the

District of Delaware; (g) the Securities and Exchange Commission (h) counsel to the Pre-Petition

Agent and the proposed DIP Agent; and (i) certain other parties, if any, identified in the

certificate of service filed with the Court, including, without limitation, all creditors who have

filed or recorded pre-petition liens or security interests against any of the Debtors' assets.  The

Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed

Final Order shall file written objections with the Clerk of the Court no later than

___*June 24*___, **2011** at 4:00 p.m. (prevailing Eastern time), which objections shall be

served so that the same are received on or before such date by:  (a) counsel for the Debtors,

29

Polsinelli Shughart PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward, Fax: (302) 252-0921; (b) counsel for Pre-Petition Agent and proposed DIP Agent, Jones Day, 2727 North Harwood Street, Dallas, Texas 75201, Attn: Gregory M. Gordon, Fax: (214) 969-5100; (c) counsel to any Creditors' Committee; and (d) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Juliet Sarkessian, Fax: (302) 573-6497. Notwithstanding the terms of this Interim Order, this Court is not precluded from entering a Final Order containing provisions that are inconsistent with, or contrary to, any of the terms in this Interim Order, subject to the protections under section 364(e) of the Bankruptcy Code and the rights of the DIP Lenders to terminate the DIP Credit Agreement if such Final Order is not acceptable to them. In the event this Court modifies any of the provisions of this Interim Order or the DIP Credit Documents following such further hearing, such modifications shall not affect the rights and priorities of DIP Lenders pursuant to this Interim Order with respect to the Collateral, and any portion of the DIP Obligations which arises or is incurred, advanced or paid prior to such modifications (or otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

(c) **Retention of Jurisdiction**. This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

SO ORDERED by this Court this 8th day of June, 2011.

The Honorable Kevin Gross
United States Bankruptcy Judge

DLI-6356704v7
1985365.1