# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>SIGNATURE STYLES, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 11-11733 (KG)<br>(Jointly Administered)<br><br>**Hearing Date: June 30, 2011 at 3:30 p.m.**<br>**Objections Due: June 23, 2011 at 4 p.m., extended for the U.S. Trustee to June 25, 2011 at 4 p.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF THE DEBTORS FOR AN ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS, (II) APPROVING CERTAIN BIDDING PROTECTIONS, (III) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (IV) SCHEDULING AN AUCTION AND SALE HEARING**

Roberta A. DeAngelis, the United States Trustee for Region 3 ("U.S. Trustee"), by and through her undersigned attorneys, hereby objects to the Motion of the Debtors for an Order (I) Approving Bidding Procedures for the Sale of Substantially All of their Assets, (II) Approving Certain Bidding Protections, (III) Approving the Form and Manner of Notice of the Sale and Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Scheduling an Auction and Sale Hearing (Docket No. 19) (the "Motion"), and in support of that objection states as follows:

## PRELIMINARY STATEMENT

1. The Motion seeks approval of a rushed sale of substantially all of the Debtors' assets to the stalking horse Artemiss, which is an acquisition vehicle formed by the Debtors' pre-petition lenders, one of which is also the 100% equity holder of the Debtors, and

all of which are affiliated with Patriarch Partners LLC. A Patriarch affiliate is also the agent on the debtor-in-possession financing. All of the Patriarch affiliates are referred to herein as "Patriarch."

2. The U.S. Trustee objects to that portion of the Motion seeking to pay Patriarch an expense reimbursement of up to $300,000, if it is outbid at the auction. The purpose of expense reimbursements is as incentive to a party to invest its time and money to do the due diligence necessary to make a stalking horse bid, knowing it might be outbid at the auction and therefore out-of-pocket for its expenses. As the pre-petition lender and equity holder, Patriarch did not need to undertake any due diligence to make a bid, did not need an incentive to make a bid, and does not need to be compensated if it is not the winning bidder at the auction, because, regardless of the outcome of the auction, Patriarch, will benefit. Either Patriarch will be the winning bidder, or, if it is outbid, the additional proceeds of the sale likely will be used to pay down Patriarch's secured claim. As Patriarch did not need any incentive to make the stalking horse bid, the expense reimbursement is not "actually necessary to preserve the value of the estate," as required under Third Circuit law. *See Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir. 1999).

3. The U.S. Trustee also objects to the time allotted for the marketing and auction process. The Debtors are seeking a bid deadline of July 29, 2011, which is less than two months from the petition filing date of June 6, 2011. This is an especially short period of time given that there was no pre-petition marketing.[1] Such a brief sale process is insufficient

---

[1] The Debtors did not retain their investment banker until a few days before the petition date. *See* engagement letter dated June 1, 2011, attached to Application of Debtors to Retain and Employ Western Reserve Partners LLC as Investment Bankers to the Debtors (Dkt. No. 18).

2

to allow the Debtors to reach all potential purchasers, and for all potential purchasers to adequately perform due diligence. The net result will be a chilling of competitive bidding, and the elimination of competition to Patriarch's bid. The Court itself expressed concern at the first day hearing on June 8, 2011 that the August 15, 2011 termination date of the DIP financing would not allow for sufficient time to conduct a full sales process. The U.S. Trustee shares that concern.

4. For these reasons, set forth in detail below, the U.S. Trustee respectfully requests this Court to issue a ruling denying the Motion.[2]

## JURISDICTION

5. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the this objection.

6. Pursuant to 28 U.S.C. § 586(a)(3), the U. S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U. S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U. S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

---

[2] The U.S. Trustee has issues with respect to other aspects of the relief sought by the Motion, which have been conveyed to counsel for the Debtors. Counsel for the U.S. Trustee believes those issues are likely to be consensually resolved, but to the extent they cannot be, the Debtors' counsel has agreed to allow the U.S. Trustee to raise them at the hearing on bid procedures on June 30, 2011.

7. Under 11 U.S.C. § 307, the U. S. Trustee has standing to be heard on the issues raised by this objection.

## BACKGROUND

8. On June 6, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

9. On June 17, 2011, the U.S. Trustee appointed an official committee of unsecured creditors.

10. On the Petition Date, the Debtors filed the Motion, which seeks, among other things, approval of certain bid procedures for the sale of substantially all of the Debtors' assets through a bidding and auction process.

11. Pursuant to the Motion, the Debtors seek to (i) establish July 29, 2011 as the bidding deadline for the purchase of all of the Debtors' assets; (ii) schedule an auction for August 1, 2011; and (iii) schedule a hearing to consider approval of the proposed sale on August 3, 2011. Motion, ¶19.

12. The stalking horse is an acquisition vehicle formed by the Debtors' pre-petition lenders, one of which is also the 100% equity holder of the Debtors, and all of which are affiliated with Patriarch. *See* Motion, ¶¶ 7, 13. A Patriarch affiliate is also the agent on the debtor-in-possession financing.

13. Patriarch has offered to purchase all of the assets of the Debtors, the consideration for which will be Patriarch's assumption of $30 million in obligations under the pre-petition loans, and up to $10 million of the amount of gift card and gift certificate customer

obligations, with certain limits. *See* Asset Purchase Agreement attached to as Exhibit A to the sale motion (Dkt. No. 12), §§ 2.2, 2.4.

14. Through the Motion, the Debtors seek approval of certain bidding procedures and protections, including an expense reimbursement of up to $300,000, payable to Patriarch in the event it is outbid at the Auction. *See* Motion, p. 16.

## ARGUMENT

### Objection to the Expense Reimbursement

15. The U.S. Trustee objects to the Motion because the expense reimbursement is unreasonable and not appropriate under relevant Third Circuit law. In particular, the Reimbursement should not be allowed where, as here, the stalking horse is the Debtors' secured lender and equity holder.

16. To award a break-up fee or expense reimbursement to a potential bidder, the court must determine that the fee was an actual and necessary cost and expense of preserving the estate. *See In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999). In *O'Brien*, the Third Circuit Court of Appeals held that "the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Id.* at 535.

17. The burden is on debtors to prove the necessity of, and benefit to the estate from, any proposed breakup fee or expense reimbursement. In addition, although "the considerations that underlie the debtor's judgment may be relevant to the bankruptcy court's determination on a request for break-up fees and expenses," "the business judgment rule should not be applied as such in the bankruptcy context." *Id.*

18. Moreover, as recognized by the Third Circuit in *O'Brien*:

> [E]ven if the purpose for the break-up fee is not impermissible, the break-up fee may not be needed to effectuate that purpose. For example, in some cases a potential purchaser *will bid whether or not break-up fees are offered* . . . . In such cases, the award of a break-up fee cannot be characterized as necessary to preserve the value of the estate.

181 F.3d at 535 (emphasis added).[3]

19. That is the situation presented here. As the pre-petition lender and equity holder, Patriarch would have made a bid whether or not an expense reimbursement was offered, because, regardless of the outcome of the auction, Patriarch will benefit. Either Patriarch will be the winning bidder, or, if it is outbid, the additional proceeds of the sale likely will be used to pay down Patriarch's secured claim. As Patriarch did not need an incentive to make the stalking horse bid, the expense reimbursement is not "actually necessary to preserve the value of the estate," as required under *O'Brien*.

20. Reimbursement of expenses are sometimes approved to compensate an initial bidder for the time and expense of negotiating an agreement and conducting due diligence in connection therewith. Yet Patriarch has no need for such compensation, because, as the equity holder and pre-petition lender, it had no need to undertake due diligence to make a stalking horse bid.

21. The expense reimbursement is not truly a bid protection, but rather is a blocking protection. The cost simply makes it more difficult for other bidders to propose a qualified bid in the first instance, let alone to become the winning bidder. In that respect, the expense reimbursement chills the bidding process, which makes that cost impermissible under the *O'Brien* standard.

---

3   *See also In re Reliant Energy Channelview LP*, 200 F.3d 594 (3d Cir. 2010) (affirming disallowance of retroactive grant of break-up fee that was sought after the stalking horse bidder had bid for the assets).

**Objection to the Abbreviated Time Frame of the Sale Process**

22. Section 363(b)(1) of the Bankruptcy Code permits a debtor-in-possession to sell property of the estate outside the ordinary course of business. The debtor-in-possession bears the burden of proof to show that the sale is in the best interests of the creditors and the estate:

> "The sale of assets which is not in the debtor's ordinary course of business requires proof that: (1) there is a sound purpose for the sale; (2) the proposed sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the buyer has acted in good faith. The element of 'good faith' is of particular importance as the Third Circuit made clear in *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 149-50 (3d Cir. 1986)."

*In re Exaris Inc.,* 380 B.R. 741 (Bankr. Del. 2008) (some citations omitted).

23. Initially, the Court must determine that the bidding procedures will bring the best and highest price for the debtors' assets. The debtors must show that the assets have been fully marketed and that the sale is sufficiently publicized in order to prove that the assets will be sold for a fair and reasonable price. *See In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

24. The speed at which the Debtors propose to sell all of their assets creates a risk that potential buyers will not be reached, or that all potential purchasers will not have adequate time to perform due diligence, thereby reducing competition for purchase of the Debtors' assets. The net result will be a reduction in competitive bidding, and, concomitantly, in the proceeds to be realized from the sale of those assets..

25. The U.S. Trustee leaves the Debtors to their burden and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter

and/or modify this objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

**WHEREFORE,** the United States Trustee respectfully requests this Court to deny the Motion as stated herein, and award such other relief as this Court deems appropriate under the circumstances.

Dated: June 24, 2011
       Wilmington, Delaware

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**UNITED STATES TRUSTEE**

By: */s/ Juliet Sarkessian*
Juliet Sarkessian, Esquire
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)